UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| EARL D. HICKSON, | : |
| | : |
| Plaintiff, | : Case Number: 08-cv-02407(NLH) |
| | : |
| v. | : |
| | : |
| MARINA ASSOCIATES d/b/a | : |
| HARRAH'S CASINO HOTEL | : |
| ATLANTIC CITY i/s/h/a | : |
| HARRAH'S HOTEL and CASINO | : |
| a/k/a HARRAH'S ATLANTIC | : |
| CITY, ALEXANDER LOVAS, | : |
| SECURITY OFFICER THOMPSON, | : |
| SURVEILLANCE OFFICER ANN, | : |
| JOSH LICHTBLAU, DIRECTOR, | : |
| DIVISION OS GAMING | : |
| ENFORCEMENT, MARK KOSKO, | : |
| BADGE #4540, NJ DIVISION OF | : |
| GAMING ENFORCEMENT, GEORGE | : |
| MORTON, ESQ. | : |
| | : |
| Defendants. | : |
| | : |

---

BRIEF OF DEFENDANTS, JOSH LICHTBLAU, DIRECTOR OF THE STATE OF NJ
DIVISION OF GAMING ENFORCEMENT; MARK KOSKO, BADGE #4540, NJ
DIVISION OF GAMING ENFORCEMENT; AND, GEORGE MORTON, ESQ., IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
Attorney for State defendants

Kathleen Bartus (ID No. 8222)
Deputy Attorney General
On the Brief
(609) 777-4872

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . 1

III. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . 2

IV.  ARGUMENT

     POINT I

     ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT
     NJ DGE SHOULD BE DISMISSED FOR LACK OF JURISDICTION  . . . 4

     POINT II

     THE STATE DEFENDANTS ENJOY IMMUNITY
     FROM ALL OF PLAINTIFF'S CLAIMS

          (A) NJ Division of Gaming Enforcement Is Not A Person
              Subject To Suit Under 42 U.S.C. § 1983 Or The
              New Jersey Civil Rights Act. . . . . . . . . . . 7

          (B) Josh Lichtblau, Mark Kosko and George Morton,
              Esq. Possess Qualified Immunity As To Plaintiff's
              42  U.S.C. § 1983 And New Jersey Civil Rights
              Act Claims.  . . . . . . . . . . . . . . . . . . 9

          (C) Josh Lichtblau, the Director of the Division
              of Gaming Enforcement had no involvement, direct
              or indirect in this matter. . . . . . . . . . . 12

          (D) Plaintiff Cannot Sustain a §1981 Claim of
              Racially Motivated Conspiracy to
              Deprive Constitutional   Rights against the
              State Defendants.  . . . . . . . . . . . . . . . 14

          (E) All State Defendants Are Shielded From
              Plaintiff's TortClaims, if any, Because
              Of Discretionary Immunity. . . . . . . . . . . . 15

          (F) Plaintiff's Tort Claims regarding False Arrest
              and False Imprisonment, Fail Because Of The
              TCA's Good Faith Immunity. . . . . . . . . . . . 16

i

POINT III

PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM
SHOULD BE DISMISSED BECAUSE OF HIS FAILURE
TO FILE AN AFFIDAVIT OF MERIT  . . . . . . . . . . . . .  17

POINT IV

PLAINTIFF CANNOT DEMONSTRATE THE REQUISITE
INTENT ON THE PART OF THE INDIVIDUAL
DEFENDANTS TO RECOVER PUNITIVE DAMAGES
UNDER 42 U.S.C. §1983  . . . . . . . . . . . . . . . . .  19

POINT V

THE TORT CLAIMS ACT BARS DAMAGES FOR
PAIN AND SUFFERING AGAINST THE
STATE DEFENDANTS UNDER N.J.S.A. 59:9-2(d)  . . . . . . .  20

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  23

## CASES

Anderson v. Liberty Lobby, 477 U.S. 242, 252-55 (1986)  . .  3, 4

Brooks v. Odom, 150 N.J. 395, 403-406 (1997)  . . . . . . . .  19

Callahan v. City of Philadelphia, 207 F.3d 668, 669-70  (3d Cir.
2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Canico v. Hurtado, 144 N.J. 361, 365 (1996) . . . . . . . . .  16

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)  . . . .  3, 4

Collins v. Union County Jail, 150 N.J. 407,  . . . . . . . .  20

Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) . . . . .  10

Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002)  . . . . .  10

Duarte v. Healy, 405 Mass. 43, 47 (1989)  . . . . . . . . . .  11

Edelman v. Jordan, 415 U.S. 651, 663 (1974) . . . . . . . . . 5

Evans v. Rohrbach, 35 N.J. Super. 260, 263-264 (App. Div.) certif.
den.  sub nom. Evans v. Matthews, 9 N.J. 362 (1955).  . . . .  13

Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 146-47 (2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fielder v. Stonack, 141 N.J. 101, 123-25 (1995) . . . . . . .  16

Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.
1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Garcia v. Richard Stockton College, 210 F. Supp. 2d 545, 549
(D. N.J. 2002)  . . . . . . . . . . . . . . . . . . . . . . . 5-7

Jenness v. Nickerson, 637 A.2d 1152, 1159 (Me. 1994)  . . . .  11

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 585 n.10 (1986) . . . . . . . . . . . . . . . . 3

McGlynn v. Schultz, 95 N.J. Super. 412, 416 (App. Div. 1967)  12

Miladys Familia v. University Hosp. of the Univ. of Med.,
350 N.J. Super. 563, 569 (App. Div. 2002) . . . . . . . . . .  17

Miller v. Muscarelle, 67 N.J. Super. 305, 320 (App. Div.)

certif. den., 36 N.J. 140 (1961) . . . . . . . . . . . . .  12

N.J.S.A. 2A:53A-29, Burt v. W. Jersey Health Sys., 339 N.J.
Super. 296, 304 (App. Div. 2001) . . . . . . . . . . . . .  18

New Jersey Constitution"), Fuchilla v. Layman, 109 N.J. 319,
306-07 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 9

Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310,
323 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 5

Pearson v. Callahan, 555 U.S. __, 129 S.Ct. 808, 815
(2009). . . . . . . . . . . . . . . . . . . . . . . . . . .9, 10

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89,
119-20 (1984) . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

Quern v. Jordan, 440 U.S. 332, 350 (1979) . . . . . . . . . 8

Randall v. State, 222 N.J. Super. 192 (App. Div. 1994). . . . . 20

Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 541
(2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Ritchie v. Cahall, 386 F. Supp. 1207, 1209 (D. N.J. 1974) . . . 6

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).   10, 11

Siegert v. Gilley, 500 U.S. 226, 232 (1991) . . . . . . . . . 10

Simmerman v. Corino, 804 F. Supp. 644, 650 (D. N.J. 1992).   5, 6

Smith v. Wade, 461 U.S. 30 (1983) . . . . . . . . . . . 18, 19

State Farm v. State, 124 N.J. 32, 46-47 . . . . . . . . . . . 9

Thorpe v. Cohen, 258 N.J. Super. 523, 530 (App. Div. 1992) .  20

Trap Rock Indus. v. Local 825, 982 F.2d 884, 890
(3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 3

Trustees Structural Steel v. Huber, 126 N.J. Super. 501 (App. Div.
1975) certif. den. 70 N.J. 143 (1976) . . . . . . . . . . .  12

Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) . . .  16

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71
(1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

## CONSTITUTION

U.S. Const. Amend. XI . . . . . . . . . . . . . . . . . . . . . . 4

## STATUTES

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . 11, 18

N.J.S.A. 10:6-2(c) . . . . . . . . . . . . . . . . . . . 8

N.J.S.A. 2A:53A-26 - 2A:53A-29 . . . . . . . . . . . . . . 17

N.J.S.A. 2A:53A-27 . . . . . . . . . . . . . . . . . . . . 17

N.J.S.A. 59:2-3 . . . . . . . . . . . . . . . . . . . . . 15

N.J.S.A. 59:3-1(a) . . . . . . . . . . . . . . . . . . . . 12

N.J.S.A. 59:3-1(b) . . . . . . . . . . . . . . . . . . . . 12

N.J.S.A. 59:3-3 . . . . . . . . . . . . . . . . . . . 15, 16

N.J.S.A. 59:9-2(d) . . . . . . . . . . . . . . . . . . . .20

## RULES

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . 22

## OTHER AUTHORITIES

Restatement (Second) of Torts §908(1)(1977) . . . . . . . . 19

## I.    INTRODUCTION

The State defendants, Josh Lichtblau, Director of the Division of Gaming Enforcement; Mark Kosko, Badge #4540, New Jersey Division of Gaming Enforcement; and George Morton, Esq., submit this brief in support of their Motion for Summary.

## II.   STATEMENT OF MATERIAL FACTS[*]

The State defendants submit the following statement of material facts:

1.    On May 15, 2006, Detective Mark Kosko, badge #4540, of the Division of Gaming Enforcement, New Jersey State Police, was summoned to Harrah's Hotel and Casino for a theft complaint.  (See Det. Kosko's investigation report at Exhibit "A").

2.    Plaintiff herein, Earl Hickson, was accused of removing a slot voucher from a machine which was being played by another patron, Sharon Fedaczynsky.  (Exhibit "A").

3.    After security officers and Det. Kosko spoke to Plaintiff herein and Ms. Fedaczynsky, plaintiff was taken to the in-house NJSP office within Harrah's.  (Exhibit "A").

4.    Det. Kosko viewed the CCTV coverage of the incident. (Exhibit "A").

---

[*]These state defendants will assume, without conceding, the truth of the factual allegations set forth in the Complaint, since this is the state defendants' motion for summary judgment. However, in the event the state defendants' motion is denied, these defendants withdraw the assumption and concede only those allegations set forth in their answer and discovery.

5. After viewing the CCTV coverage, Det. Kosko completed a summons charging plaintiff herein, Earl Hickson, with Theft by Unlawful Taking. (Exhibit "A"; see also summons complaint at Exhibit "B").

6. At that time, plaintiff herein, was also found to have an outstanding warrant from the Atlantic County Superior Court for bail jumping. (Exhibit "A"; see also, warrant at Exhibit "C").

7. Plaintiff herein was then transported to the Atlantic County Jail and incarcerated. (Exhibit "A").

8. Plaintiff then filed a complaint against defendants herein on May 15, 2008 alleging, inter alia, various civil rights and other violations. (See Third Amended Complaint at Exhibit "D").

9. As against defendant, Morton, plaintiff makes various allegations regarding a 2003 case in Atlantic County. (Exhibit "D").

10. In January, 2003, George Morton, Esq. was appointed by the Office of the Public Defender to be stand-by counsel for plaintiff herein, Earl Hickson. (See certification of George Morton, Esq., ¶2 at Exhibit "E").

11. Defendant, Morton has not represented Mr. Hickson in any capacity or appeared on his behalf since 2003. (Exhibit "E").

### III.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and

2

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 252-55 (1986). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255.

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." Id. at 587 (quoting Fed. R. Civ. P. 56(e)).

The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported

motion for summary judgment." Liberty Lobby, 477 U.S. at 257.   A
proper motion for summary judgment will not be defeated by merely
colorable or insignificantly probative evidence.  See id. at 249-50.

     Importantly, when the non-moving party has the burden of proof
at trial, that party must establish the existence of each element
on which will bears the burden of proof at trial.  Celotex, 477 U.S.
at 322-23.   If the non-moving party fails to make this showing,
"there can be no genuine issue as to any material fact, since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  Id.  The moving party is thus entitled to a judgment
as a matter of law.  Id. at 323.

IV.   **ARGUMENT**

### POINT I

#### ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT
#### NJ DGE SHOULD BE DISMISSED FOR LACK OF JURISDICTION

     This court lacks jurisdiction to hear any of plaintiff's claims
against New Jersey Division of Gaming Enforcement.   The Eleventh
Amendment provides that "[t]he Judicial power of the United States
shall not be construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United States by citizens
of another State, or by Citizens or Subjects of any Foreign State."
U.S. Const. Amend. XI.   It operates as a limitation on the subject
matter jurisdiction which may be exercised by federal courts.   See

4

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 119-20
(1984).

"[T]he Eleventh Amendment . . . has been interpreted to render
states . . . generally immune from suit by private parties in
federal court." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297
F.3d 310, 323 (3d Cir. 2002). Accordingly, any suit by private
parties seeking to impose a liability which must be paid from public
funds in a state treasury is barred from federal court by the
Eleventh Amendment, unless immunity is waived by the state itself
or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651,
663 (1974). The Eleventh Amendment protects states and their
agencies and departments from suit in federal court regardless of
the type of relief sought. Pennhurst, 465 U.S. at 100.

In the instant case, it is beyond dispute that the NJ Division
of Gaming Enforcement is a state entity and, as such, enjoys
Eleventh Amendment immunity from suit in federal court. Simmerman
v. Corino, 804 F. Supp. 644, 650 (D. N.J. 1992).

In addition, neither the State of New Jersey nor any federal
statute has announced, in "unmistakably clear" terms, an intention
to waive sovereign immunity in federal court with respect to any of
plaintiff's state and federal claims. See Raygor v. Regents of the
Univ. of Minn., 534 U.S. 533, 541 (2002); see also Garcia v. Richard
Stockton College, 210 F. Supp. 2d 545, 549 (D. N.J. 2002)("In order
for a state statute. . . to constitute a waiver of Eleventh

Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*") (emphasis in original). While the State of New Jersey did consent, via the Tort Claims Act, to be sued in state court for certain state law claims, the "Tort Claims Act does not mention the state's liability in federal court", and there is not "any other provision of law that might do so." Garcia, 210 F. Supp. 2d at 549 (citing N.J.S. A. 59:1-14); Ritchie v. Cahall, 386 F. Supp. 1207, 1209 (D. N.J. 1974) ("Nowhere in the [Tort Claims] Act is there indication that the immunity provided by the Eleventh Amendment is impaired."); see also Hyatt v. County of Passaic, 2009 U.S. App. LEXIS 15737, at *8 (3d Cir. July 16, 2009)("The [Tort Claims Act], which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver.").

Consequently, the NJ Division of Gaming Enforcement is immune from suit pursuant to the Eleventh Amendment of the U.S. Constitution, and all claims against it should be dismissed for lack of subject matter jurisdiction. See, e.g., Simmerman, 804 F. Supp. 644 (granting summary judgment as to all state and federal claims against DYFS because of Eleventh Amendment sovereign immunity).

Similarly, the State of New Jersey, and by extension the NJ Division of Gaming Enforcement, is immune from suit under its own laws in federal court. Federal district courts have no jurisdiction

6

to hear supplemental state law claims against sovereign entities absent consent by the entity to suit in federal court. See Raygor, 534 U.S. at 540 (Section 1367's grant of jurisdiction does not extend to claims against non-consenting state defendants), Pennhurst, 465 U.S. 89. As this Court has noted, the "clear-statement rule for waiver of the state's sovereign immunity . . . applies with equal force to supplemental state-law claims." Garcia, 210 F. Supp. 2d. at 550 ("[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation.") (citing College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999)).

Because the State of New Jersey has not clearly consented to be sued in federal court for any of plaintiff's state law claims for which this Court has supplemental jurisdiction, all state law claims against defendant NJ Division of Gaming Enforcement should be dismissed for lack of jurisdiction for this reason as well.

### POINT II

#### THE STATE DEFENDANTS ENJOY IMMUNITY
#### FROM ALL OF PLAINTIFF'S CLAIMS

### (A) NJ Division of Gaming Enforcement Is Not A Person Subject To Suit Under 42 U.S.C. § 1983 Or The New Jersey Civil Rights Act.

Even if sovereign immunity did not preclude all of plaintiff's claims against the NJ Division of Gaming Enforcement, his § 1983 claims and New Jersey Civil Rights Act ("NJCRA") claim fails because the NJ Division of Gaming Enforcement is not considered a "person"

7

within the meaning either statute.    See   Callahan v. City of
Philadelphia, 207 F.3d 668, 669-70   (3d Cir. 2000) ("we emphasize
that the distinction between the Eleventh Amendment and 42 U.S.C.
§ 1983 defenses . . .  should be kept clear").

     42 U.S.C. § 1983 provides plaintiffs with a tort damages
remedy for violations of their constitutional rights.    See 42
U.S.C. § 1983 ("any *person* who . . . subjects. . . any citizen. .
. to the deprivation of any rights, privileges or immunities secured
by the Constitution or its laws . . . shall be liable to the party
injured") (emphasis supplied).    Nevertheless, the Supreme Court
established in Quern v. Jordan that states are not liable under §
1983 because they do not fit into the statute's category of
"persons".  440 U.S. 332, 350 (1979).  Arms of the state that have
traditionally enjoyed sovereign immunity, as well as officials
acting in their official capacities, are also not considered
"persons" under § 1983.  Will v. Michigan Dep't of State Police, 491
U.S. 58, 71 (1989).

     Similarly, the "NJCRA was intended to serve as an analog to [§
1983]; it was intended to incorporate and integrate seamlessly with
existing civil rights jurisprudence." Chapman v. New Jersey, 2009
U.S. Dist. LEXIS 75720, *7 (D. N.J. Aug. 25, 2009).    To this end,
the NJCRA also requires that a defendant be a person and not a state
entity.  See N.J.S.A. 10:6-2(c) ("Any person who has been deprived

8

of . . . any substantive rights, privileges or immunities . . . by a *person* acting under color of law . . . .") (emphasis supplied).

As noted, *infra*, it is "beyond dispute" that the NJ Division of Gaming Enforcement is a state entity; thus, plaintiff's § 1983 and NJCRA claims against it must be dismissed because it is not a person as required by both statutes. See <u>Will</u>, 491 <u>U.S.</u> at 66 (instructing that a state is not a "person" within the meaning of § 1983), <u>Chapman v. New Jersey</u>, 2009 <u>U.S. Dist. LEXIS</u> 75720 at *7 ("Since the NJCRA is substantially modeled after [§ 1983], and shares the requirement that the defendant sued be a person, the NJCRA should also be deemed to incorporate <u>Will</u>."); <u>see generally</u> <u>State Farm v. State</u>, 124 <u>N.J.</u> 32, 46-47 (1991) (The New Jersey Supreme Court employs "the same standards developed by the United States Supreme Court under the federal Constitution for resolving due process claims under the New Jersey Constitution"), <u>Fuchilla v.</u> <u>Layman</u>, 109 <u>N.J.</u> 319, 306-07 (1988) (neither the state nor its alter ego is a person for the purposes of § 1983, regardless of whether the action is brought before a state or federal forum).

## (B) Josh Lichtblau, Mark Kosko and George Morton, Esq. Possess Qualified Immunity As To Plaintiff's 42 U.S.C. § 1983 And New Jersey Civil Rights Act Claims.

The doctrine of qualified immunity immunizes government officials "from liability for civil damages [under § 1983] insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have

known." Pearson v. Callahan, 555 U.S. __, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It reflects the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

A government official's entitlement to qualified immunity turns on two considerations: (1) whether the plaintiff has alleged that the defendant violated a constitutional right, and (2) "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).**

Where a defendant asserts this defense in a motion for summary judgment, the plaintiff has the initial burden to prove that the defendant's conduct violated some clearly established right.

---

** The Supreme Court, in Pearson v. Callahan, 555 U.S. _, 129 S. Ct. 808 (2009), held that the two-step Saucier analysis is no longer mandatory and that courts need not first determine whether the facts alleged by the plaintiff make out a violation of a constitutional right. Rather, courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. If a court first determines that the right at issue was not clearly established at the time of the offense, it need not explore the factual support for the plaintiff's allegations of a constitutional violation, and may grant qualified immunity.

10

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997), see also
Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) ("[d]etermining
whether plaintiff has alleged a violation of a statutory or
constitutional right is . . . the threshold issue, and the Supreme
Court has clearly instructed that [courts] must not 'assume, without
deciding, this preliminary issue.'") (citing Siegert v. Gilley, 500
U.S. 226, 232 (1991)). Only upon carrying this initial burden must
the defendant then demonstrate "that no genuine issue of material
fact remains as to the 'objective reasonableness' of the defendant's
belief in the lawfulness of his actions." Sherwood, 113 F.3d 396
at 399.***

---

        ***    While the above analysis discusses 42 U.S.C. § 1983
jurisprudence, it applies with equal validity to NJCRA claims.
See, e.g., O'Donnell v. Simon, 2007 U.S. Dist. LEXIS 53670, *14 n.4
(D. N.J. July 25, 2007) aff'd 2010 U.S. App. LEXIS 1893 (3d Cir.
Jan. 28, 2010) ("the NJCRA parallels 42 U.S.C. §1983 and therefore
qualified immunity should apply with equal validity to NJCRA
claims"); Rivera v. Hopatcong Borough Police Dep't, 2010 U.S. Dist.
LEXIS 9008, *20 n.3 (D. N.J. Feb. 3, 2010) (granting summary
judgment as to § 1983 and NJCRA claims on qualified immunity
grounds); Governor's Statement Upon Signing Assembly Bill A2073,
available at http://www.judiciary.state.nj.us/legis/
2004c143.pdf (last visited Apr. 6, 2010) (the NJCRA "does not
create any new substantive rights, override existing statutes of
limitations, waive immunities or alter jurisdictional or procedural
requirements") (emphasis supplied); see also Jenness v. Nickerson,
637 A.2d 1152, 1159 (Me. 1994)(the Maine Civil Rights Act grants
officials qualified immunity under the same standard as that
granted under § 1983), Duarte v. Healy, 405 Mass. 43, 47 (1989)
(qualified immunity principles as developed under Federal law also
shield public officials from liability under Massachusetts Civil
Rights Act).

The inquiry in this case must begin with the question of whether the plaintiff's allegations are sufficient to establish "a violation of a constitutional right at all."   For the reasons discussed at length, *supra*, none of the state individual defendants, Lichtblau, Kosko or Morton, violated plaintiff's constitutional rights, and a reasonable person in their positions would not view the conduct at issue as unlawful in the situation confronted.

Accordingly, the individual state employee defendants   are entitled to qualified immunity from plaintiff's § 1983 and NJCRA claims.

## (C)  Josh Lichtblau, the Director of the Division of Gaming Enforcement had no involvement, direct or indirect in this matter.

Under the Tort Claims Act, N.J.S.A. 59:3-1(a), a public employee is liable for injury he or she causes to the same extent as a private individual, except as the Act otherwise provides. Conversely, a public employee is entitled to defenses which would be available to a private citizen.   N.J.S.A. 59:3-1(b).   One such defense is that the doctrine of respondeat superior does not allow a plaintiff to recover from superior employees for the torts of subordinate employees absent the superior employee's direct participation in the tort.

In Trustees Structural Steel v. Huber, 126 N.J. Super. 501 (App. Div. 1975) certif. den. 70 N.J. 143 (1976), the court noted that a corporate officer or director may only be held personally liable for torts in which he is personally involved.

12

> It is well established that while a director
> or officer of a corporation does not incur
> personal liability for its torts merely by
> reason of his official character, if he
> directs the tortious acts to be done, or
> participates or cooperates therein, he is
> personally liable to third persons injured or
> damaged thereby, even though liability may
> also attach to the corporation. [Id. at 505].

See also McGlynn v. Schultz, 95 N.J. Super. 412, 416 (App. Div.

1967); Miller v. Muscarelle, 67 N.J. Super. 305, 320 (App. Div.)

certif. den., 36 N.J. 140 (1961).

In Evans v. Rohrbach, 35 N.J. Super. 260, 263-264 (App. Div.)

certif. den.  sub nom. Evans v. Matthews, 9 N.J. 362 (1955), the

Appellate Division discussed the liability of a prison

superintendent's corporate counterpart, a company official, for an

employee's tort.  The court said that:

> While a director or officer of a corporation
> does not incur personal liability for its
> torts merely by reason of his official
> character, yet a director or officer who
> commits the tort or who directs the tortious
> act to be done, or participates or cooperates
> therein, is liable to third persons injured
> thereby, even though liability may also attach
> to the corporation for the tort.

The Evans court upheld a grant of summary judgment in favor of a

corporation's president and vice-president in charge of operations.

The plaintiff was injured when certain employees failed to follow

corporate safety regulations.  The court easily rejected the

contention that the president might be vicariously liable for the

acts of the employees because there was no hint of any direct like

13

between him and the accident.  It then addressed the more difficult question of the vice-president's liability, and concluded that he was "reasonably entitled to assume, in the absence of notice to the contrary, that the safety regulations concededly promulgated by the company...were being enforced and that supervision in that regard was being exercised b one or more of those responsible in the chain of authority."  Id. at 266.  The fact that he was in charge of the plant where the accident occurred was held insufficient to impose liability.

In the case before this court, plaintiff seeks to hold the Director of the Division of Gaming Enforcement, Josh Lichtblau, responsible for the alleged torts of lower lever employees.  There is no doubt that Director Lichtblau had no personal involvement in the occurrence at Harrah's Casino regarding the plaintiff herein, a necessary requirement for him to be found liable.  Thus, there is no genuine issue of fact, whose resolution in the plaintiff's favor might result in the Director of the Division of Gaming Enforcement being liable as a matter of law.  Therefore, defendant, Lichtblau is entitled to summary judgment as a matter of law.

## (D) Plaintiff Cannot Sustain a §1981 Claim of Racially Motivated Conspiracy to Deprive Constitutional Rights against the State Defendants.

To establish a violation of 42 U.S.C. §1981, plaintiff must put forth evidence of racial discrimination. §1981 provides that:

> All persons within the jurisdiction of the
> United States shall have the same right in

14

> every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence,
> and to the full and equal benefit of all laws
> and proceedings for the security of persons
> and property as is enjoyed by white citizens
> and shall be subject to the like punishment,
> pains, penalties, taxes, licenses and
> exactions of every kind, and no other.

In essence, §1981 grants all citizens the "same right to make and enforce contracts" and makes unlawful a refusal to enter into a contractual relationship or to perform that contract if the refusal is racially motivated.

Based on the facts presented in the within matter, plaintiff cannot sustain a §1981 claim against the State defendants because there is no evidence that plaintiff was deprived of a right to enter into or enforce a contract.

Therefore, the State defendants are entitled to summary judgment with respect to the Fourth Count of racially motivated conspiracy to deprive him of constitutional rights under §1981.

## (E) All State Defendants Are Shielded From Plaintiff's Tort Claims, if any, Because Of Discretionary Immunity.

All of plaintiff's tort law claims, if any, fail because all State Defendants are shielded by discretionary immunity.

Under the TCA, neither a public employee, nor a public entity, is liable for an injury that results from the exercise of discretion or judgment vested in the employee or entity. See N.J.S.A. 59:2-3, 59:3-2. Here, plaintiff has failed to allege that any State Defendant did anything other than perform discretionary

15

duties in the capacity of a public employee.   Thus, the TCA immunizes the State Defendants from plaintiff's state law tort claims, if any.

**(F)   Plaintiff's Tort Claims regarding False Arrest and False Imprisonment, Fail Because Of The TCA's Good Faith Immunity.**

Plaintiff's tort claims, regarding false arrest and false imprisonment, also fail as to all State Defendants because of § 59:3-3 of the TCA.   N.J.S.A. 59:3-3.   Under this section, public employees and public entities are not liable if they act "in good faith in the execution or enforcement of any law."   Id.

The objective reasonableness standard that applies in § 1983 actions also governs questions of good faith arising under New Jersey law.   See Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000).   Summary judgment is appropriate if public employees can establish that their acts were objectively reasonable or that they performed them with subjective good faith.   See Canico v. Hurtado, 144 N.J. 361, 365 (1996).   The "good faith" of a public employee under N.J.S.A. 59:3-3 is judged in relation to whether the public employee's acts "involved crime, actual fraud, actual malice or willful misconduct."   B.F., 296 N.J. Super. at 385; Fielder v. Stonack, 141 N.J. 101, 123-25 (1995) (ordinary negligence is insufficient to defeat the 59:3-3 immunity).

Here, there was an outstanding bench warrant in effect for plaintiff herein, for bail jumping, that was relied on by Det.

Kosko.  Thus, Det. Kosko's actions in taking plaintiff into custody were objectively reasonable.

The instant plaintiff has shown no evidence that any State Defendant's actions were objectively unreasonable or performed in bad faith.

**POINT III**

**PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM
SHOULD BE DISMISSED BECAUSE OF HIS FAILURE TO FILE AN
AFFIDAVIT OF MERIT**

The Second and Seventh Count of plaintiff's Third Amended Complaint appear to allege professional negligence against defendant, George Morton, Esq.  In January, 2003, Mr. Morton was appointed by the Office of the Public Defender to be stand-by counsel for plaintiff herein in a matter not related to the case at bar.  Although plaintiff claims otherwise, defendant, Morton has not represented plaintiff since 2003.

In 1995, the New Jersey legislature passed the Affidavit of Merit Statute ("Statute").  See N.J.S.A. 2A:53A-26 - 2A:53A-29. The Statute requires plaintiffs seeking damages for personal injuries "resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," to provide an "affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the . . . practice or work . . . that is the subject

17

of the complaint fell outside acceptable professional or occupational standards." N.J.S.A. 2A:53A-27.

The Affidavit of Merit must be provided within sixty days of the defendant's filing of the answer. Id. Courts may grant no more than one additional period, not to exceed 60 days, to file the Affidavit of Merit, upon a finding of good cause. N.J.S.A. 2A:53A-27. The Affidavit of Merit must be provided, under any circumstances, no later than 120 days after the filing of the defendants' Answer to the Complaint. Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 146-47 (2003); see also Miladys Familia v. University Hosp. of the Univ. of Med., 350 N.J. Super. 563, 569 (App. Div. 2002) (finding that the concern of the legislature was to set an outer time limit of one hundred twenty days, beyond which no extension could be granted). Failure to provide a timely Affidavit of Merit is tantamount to a failure to state a cause of action and requires that the plaintiff's claims be dismissed with prejudice. See N.J.S.A. 2A:53A-29, Burt v. W. Jersey Health Sys., 339 N.J. Super. 296, 304 (App. Div. 2001).

To date, plaintiff has failed to file an Affidavit of Merit as required under the Statute. Accordingly, Plaintiff is far beyond the one hundred twenty-day "outer limit" to file the required Affidavit of Merit.

Therefore, Plaintiff has failed to state a cause of action with respect to defendant, George Morton, Esq. in the Second and Seventh

Counts, and those counts against defendant, Morton, should be dismissed with prejudice.

## POINT IV

### PLAINTIFF CANNOT DEMONSTRATE THE REQUISITE INTENT ON THE PART OF THE INDIVIDUAL DEFENDANTS TO RECOVER PUNITIVE DAMAGES UNDER 42 U.S.C. §1983

Plaintiff in this case cannot demonstrate the requisite intent on the part of the individual State defendants to recover punitive damages. Punitive damages are not awarded as compensation for injury; they are awarded to punish defendants and deter future conduct. They are only available if the defendants' conduct has been particularly egregious. Smith v. Wade, 461 U.S. 30 (1983); Restatement (Second) of Torts §908(1)(1977). Punitive damages are never awarded as a matter of right, no matter how outrageous the defendants' behavior. Smith v. Wade, supra. An award of punitive damages is not proper unless it is shown that the defendants' conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id.

In the case at bar, there is no evidence that the individual State defendants acted with a high degree of conscious disregard for the plaintiff's rights. Plaintiff simply cannot demonstrate that the individual State defendants were motivated by evil motive or reckless and callous indifference.

19

## POINT V

### THE TORT CLAIMS ACT BARS DAMAGES FOR PAIN AND SUFFERING AGAINST THE STATE DEFENDANTS UNDER N.J.S.A. 59:9-2(d)

Pursuant to N.J.S.A. 59:9-2(d), damages for pain and suffering for an injury caused by the negligence of a public entity or a public employee are not awarded.  The statute states, "No damages shall be awarded against a public entity...for pain and suffering...."  The statute then sets forth a limited exception to this rule: when medical treatment expenses exceed $3600 and the person suffer a permanent loss of a bodily function, permanent disfigurement or dismemberment," an award for pain and suffering may be made.   This section of the Act requires objective proof of injury.  Randall v. State, 277 N.J. Super. (App Div. 1994); See also Brooks v. Odom, 150 N.J. 395, 403-406 (1997)(Title 59 claimants must show that they have suffered a permanent loss of a bodily function that is "substantial").

To establish the "permanent loss of a bodily function," a plaintiff must first demonstrate his/her injury by "objective, credible medical evidence."  Thorpe v. Cohen, 258 N.J. Super. 523, 530 (App. Div. 1992).

In this case, plaintiff has submitted absolutely no **objective credible** evidence that he has suffered from a medical problem.  He has presented no medical treatment expenses, no medical records, and

20

no medical expert opinion that he suffered any credible objective
injury let alone a permanent loss of a bodily function.

Further, any claims for psychological injury are unsupported
by **objective credible** evidence of their existence.   The Court in
Randall v. State, 277 N.J. Super. at 197 (App. Div. 1994) held,
"[N]ot only must there be verifiable **objective manifestations** of
emotional distress, but those manifestations must be verified by
physical examination and observation by a physician." Id. at 197.
(Emphasis supplied).  In this case, plaintiff cannot demonstrate by
objective credible medical evidence that he suffered emotional
distress, and so, any psychological claim must fail.  Even assuming
that plaintiff did suffer the alleged injuries, there is absolutely
no objective evidence to reflect that they constitute a compensable
permanent loss of a bodily function.  In addition, a psychological
injury fails to meet the tort threshold and constitute a "permanent
loss of a bodily function," unless it is caused by "aggravating
factors" such as rape. Collins v. Union County Jail, 150 N.J. 407,
420 (1997).  Even in aggravated circumstances such as rape, however,
no compensation is allowed for the psychological injury unless that
injury is deemed by the Court to be "substantial." Id. at 395.
Quite simply, there is no competent proof of psychological injuries.
Even were such proof to exist, the injury would not be compensable
because it did not arise from aggravated circumstances.  In short,

21

plaintiff is not entitled for relief for pain and suffering (noneconomic damages) under the Tort Claims Act.

V.    <u>CONCLUSION</u>

For the aforementioned reasons, plaintiff's complaint should be dismissed, as to the State defendants, Josh Lichtblau, Director of the Division of Gaming Enforcement; Mark Kosko, Badge #4540, New Jersey Division of Gaming Enforcement; and, George Morton, Esq., pursuant to <u>Fed.R.Civ.P.</u> 56.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

/s/ Kathleen M. Bartus

By:_____

Kathleen Bartus
Deputy Attorney General

Dated: April 28, 2010

23

EXHIBIT "A"

# NEW JERSEY STATE POLICE

## INVESTIGATION REPORT

NCR (Check when filling)

| 1 Station/Unit | 2 Code | 3. Area Code, Phone Number & Extension | | 4 Prosecutor's Case Number | | 5. Division Case Number |
|---|---|---|---|---|---|---|
| Casino Invest Unit | H430 | 609-441-7464 | | | | |

| 6 Crime/Incident | 7. N.J.S.A. | 8 Weather | 9 Domestic Violence: | | 10. Bias Incident | | 11. Code |
|---|---|---|---|---|---|---|---|
| Theft by Unlawful Taking | 2C:20-3a. | N/A | Yes: No: X | | Yes: No: X | | Yes: X No: |

| 12 Between | 13. Hour | 14. Day & Code | 15. Month | 16. Date | 17 Year |
|---|---|---|---|---|---|
| Date & Time | 3:55PM | Mon | 05 | 15 | 06 |

| 18 Crime/Incident Location |
|---|
| Harrah's Hotel & Casino |

| 19 Municipality | 20 County | 21. Code | 22 Type of Premises | 23. Code | 24. Weapons / | 25 Code |
|---|---|---|---|---|---|---|
| Atlantic City | Atlantic | 0102 | Casino | 72 | N/A | N/A |

| 26 Victim (First, Middle, Last) | 27. Victim's Complete Address | Area Code, Phone Number and Extension |
|---|---|---|
| Sharon Fedaczynsky | 131 Orchard Street Garfield, NJ 07076 | 201-562-2033 |

| 28 Social Security Number | 29 DOB | 30. Sex | 31. Race Code | 32 Victim's Employer, City, State | Area Code, Phone Number and Extension |
|---|---|---|---|---|---|
| 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 | 02/10/60 | F | 1B | Unemployed | N/A |

| 33 Person Reporting Crime / Incident | 34. Complete Address and Phone Number | 35. Date and Time Reported |
|---|---|---|
| Alexander Lovas (#008595-11) | Harrah's Hotel & Casino 609-441-5000 | 05/15/06 4:15PM |

**36. Modus Operandi / How Committed**

Accused removed the victims slot voucher from her machine while it was unattended

| 37 Vehicle | 38. Year | 39. Make and Model | 40. Body Type | 41. Color | 42 Registration No. & State | 43. V.I.N. or Distinguishing Marks |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| VALUE STOLEN PROPERTY | 44. Currency | 45. Jewelry | 46. Furs | 47. Clothing | 48. Motor Vehicles | 49. Miscellaneous | 60 Total Value Stolen | 61 Total Value Recovered |
|---|---|---|---|---|---|---|---|---|
| | N/A | N/A | N/A | N/A | N/A | $140.25 | $140.25 | $140.25 |

| 62 Alarm Number / Year | 53. Technical Services | 60 Evidence: | Yes | No | 62 MV Summons / Warning Number | Statute Number |
|---|---|---|---|---|---|---|
| N/A | N/A | None | ....... | | N/A | N/A |
| 54 Technician | 55 Technician's Agency | NJSP - S&TS | | X | | |
| N/A | N/A | Retained | X | | | |
| 56 Chemical Lab Number | 57 Ballistics Lab Number | Returned | | X | | |
| N/A | N/A | Destroyed | | X | | |
| 58 Alcohol Involved | 59 Other Drugs Involved | 61. Status of | Yes | No | | |
| Yes: No: X Unk | Yes: No: X Unk. | Arrest Report Pending | X | | | |
| 63 VCCB Information and Phone Number Provided (1-800-242-0804) | | Prop./Veh. Report Pending | X | | | |
| Yes: No: X N/A | | Alarm Pending | | X | | |
| | | Evidence Pending | | X | | |

| 64. No. Arrested/Summ. | 65. Adult | 66. Juvenile | 67. Status Cleared | 68. Status Cleared | 69. DD Case Number | 70. Accident Case Number |
|---|---|---|---|---|---|---|
| 1 | 1 | 0 | Clear Arrest | Court | N/A | N/A |

List Arrested/Summoned · List and Identify Additional Victims · Describe Perpetrators/Suspects · Date Action Taken, Include Findings and Observations of Investigator · Physical Evidence Found · Where, by Whom · Disposition and Technical Services Performed · Interview of Victims, Witnesses, Persons Contacted · Suspects · Attach Victim Property Loss Report · Attach Statements · Court Action · All NCIC Entry/Inquiries · Prisoner Disposition.

| 71 Name / Address of Arrested / Summoned | 72. Criminal Complaint Warrant / Summons No. | 73. Age | 74. Sex | 75. Race Code | 76. D.O.B. |
|---|---|---|---|---|---|
| Earl Hickson<br>815 North Arkansas Ave<br>Atlantic City, NJ 08401 | S-2006-005766-0102 | 44 | M | 2B | 12/12/61 |

| 77S. Rank / Name (Print or Type) | 78S. Badge No. | 79S. Page | 80S. Date / Approved | 81S. Reviewer & Badge Number |
|---|---|---|---|---|
| Detective I Mark Kosko | 4580 | 1 of 3 | 05/17/06 | |
| Signature X | 82S. | | 83S. | |

S P 310 (Rev. 1/91) (S O P 07)

**NEW JERSEY STATE POLICE**

**CONTINUATION PAGE**

| 1. Station/Unit | 2. Code | 4. Prosecutor's Case Number | 5. Division Case Number |
|---|---|---|---|
| Casino Invest Unit | H430 | | H430060731 |

### May 15, 2006:

This date the undersigned was detailed to Harrah's Hotel & Casino for a Theft complaint. Arrived and first met with Security Shift Manager Alexander Lovas who advised of the following: the above listed accused, Earl Hickson was accused of removing a slot voucher from a machine which was being played by the above listed victim, Sharon Fedaczynsky. Fedaczynsky left her machine unoccupied with $140.25 in credits on the machine. She saw Hickson pushing buttons on her machine and when she returned to her machine she noticed that her credits were cashed out and the slot voucher had been removed. She then alerted security. I asked Lovas if the slot voucher had been recovered and he advised that Hickson was not in possession of the voucher when he was taken into custody by Harrah's security.

Lovas advised that there was CCTV coverage of this incident. Lovas advised that Fedaczynsky had been playing a Sizzling 7 game, machine #MA-3.

I then met with Surveillance Supervisor Anna Haig who provided me with CCTV coverage of this incident. The coverage was dated **May 15, 2006** and detailed the following:

\*3:55PM- Hickson is observed walking up and down the slot rows but not playing a machine. He stops at Sizzling 7 machine #MA-3 and punches out the credits and removes the slot voucher. Fedaczynsky then approaches Hickson and they become involved in a conversation. Security personnel then intervene.

At this point I spoke to the victim in this case (Fedaczynsky) and she advised of the following information: she was playing the Sizzling 7 machine and her husband called her over to look at his machine which was in a different row. When she left the machine she was playing she knew she had approximately $142.00 in credits on the machine. While she was talking to her husband, she noticed Hickson standing in front of her machine. When she then returned to the slot machine she had been playing, she saw that all her credits had been cashed out and the voucher had been removed. She then approached Hickson and asked him if he had taken her slot voucher. He denied taking the voucher so

| 77S. Rank / Name (Print or Type) | 79S. Page | 80S. Reviewer Report | 81S. Reviewer & Badge Number |
|---|---|---|---|
| Detective I Mark Kosko | 2 of 3 | | |
| Signature X | 82S | 83S | |

S P 310 (Rev 1/91) (S O P. 07)

**NEW JERSEY STATE POLICE**                                    **CONTINUATION PAGE**

| 1. Station/Unit | 2 Code | 4. Prosecutor's Case Number | 5 Division Case Number |
|---|---|---|---|
| Casino Invest Unit | H430 | | H430060731 |

she called for security.

At this point I met with Hickson inside the in house NJSP office. I first advised him of his rights as per Miranda at which time he refused to speak with me about this matter.

I then spoke to Slot Manager Theresa Drabik (#06249-11) who advised that the Sizzling 7 Machine # MA-3 had indeed been cashed out at 3:55PM. She also said that Fedaczynsky's Total Rewards Card was in the machine at the time it had been cashed out. Drabik did say that the voucher had not yet been redeemed. I advised Drabik her of my investigation findings and she said she would cancel that particular voucher and pay the money directly to Fedaczynsky. She then returned a short time later and payed Fedaczynsky $140.25.

I then completed a summons complaint charging Hickson with Theft by Unlawful Taking. Hickson also was found to have a outstanding warrant from the Atlantic County Superior Court for Bail Jumping and he was transported to Atlantic County Jail as a result.

**May 19, 2006:**

This date received three CCTV tapes as evidence from Harrah's Hotel & Casino Surveillance Supervisor Anna Haig. The tapes were then transported to 1300 Atlantic Ave. Atlantic City, NJ and logged into evidence.

Pending Court.

| 77S. Rank / Name (Print or Type) | 78S. Badge No. | 79S. Page | 80S. Date Reported | 81S. Reviewer & Badge Number |
|---|---|---|---|---|
| Detective I Mark Kosko | 1540 | 3 of 3 | 05/19/06 | |
| | 82S. | | 83B. | |
| Signature X | | | | |

S.P. 310 (Rev. 1/91) (S.O.P. 07)

EXHIBIT "B"

**The State of New Jersey**

S-2006-005766-01
PAGE 1 OF 1

H430060731

vs.

| COURT (NAME, ADDRESS, TELEPHONE NO.) | | Defendant Name | EARL   HICKSON |
|---|---|---|---|
| ATLANTIC CITY 2715 ATLANTIC AVE ATLANTIC CITY   NJ 08401 609-347-5560 | | Address | 815 NORTH ARKANSAS AVE |

| COUNTY OF ATLANTIC   N.J | COURT CODE 0102 | City, State | ATLANTIC CITY   NJ 08401 | SS No. 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 |
|---|---|---|---|---|

| COURT DOCKET NUMBER(S) 1   THRU   1 | Date of birth   12-12-1961 | Date of arrest   05-15-2006 |
|---|---|---|

Number of co-defendants           000      Dr. Lic. #                              SBI No.

**COMPLAINT - SUMMONS**

| Complainant Name: | TRP M KOSKO | of | NEW JERSEY STATE POLICE |
|---|---|---|---|
| | | | (IDENTIFY DEPARTMENT OR AGENCY REPRESENTED) |

Residing at _____
(ADDRESS OF PRIVATE CITIZEN COMPLAINANT)

Upon oath says that, to the best of (his) (her) knowledge, information and belief, the named defendant on or about th

15 day of   05 20 2006 in   ATLANTIC CITY   MUNICIPAL CODE NO. 0102   County of ATL   N.

did;

**WITHIN THE JURISDICTION OF THIS COURT, COMMIT THE OFFENSE OF THEFT BY UNLAWFULLY TAKING OR EXERCISING CONTROL OVER CERTAIN MOVEABLE PROPERTY, TO WIT, A GAMING VOUCHER BELONGING TO SHARON FEDACZYNSKY VALUED AT $140.25 WITH THE INTENT TO DEPRIVE THE OWNER THEREOF, SPECIFICALLY BY REDEEMING THE VICTIMS SLOT VOUCHER WHILE SHE LEFT THE MACHINE UNATTENDED.**

In Violation Of:     ☐ Domestic Violence - Confidential

| Charge Number   1 | Charge Number | Charge Number |
|---|---|---|
| N.J.S.   2C:20-3A   ACSX | N.J.S.   ACSX | N.J.S.   ACSX |
| Charge Number   1 As Amended | Charge Number   As Amended | Charge Number   As Amended |
| N.J.S.   ACSX | N.J.S.   ACSX | N.J.S.   ACSX |

Subscribed and sworn to before me this   15   day of   Ma   20 06

Signed _____   Signed _____
(NAME AND TITLE OF PERSON ADMINISTERING OATH)   (COMPLAINANT)

**YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THIS COURT TO ANSWER THIS COMPLAINT. YOU FAIL TO APPEAR ON THE DATE AND AT THE TIME STATED, A WARRANT WILL BE ISSUED FOR YOUR ARREST.**

DATE SUMMONS ISSUED  05/15/2006  DATE TO APPEAR  05/30/2006  TIME   09:00   A

_____       CCA
(SIGNATURE PERSON ISSUING SUMMONS)       TITLE

| FIRST APPEARANCE | | COURT ACTION (Where Judgement or Conditional Discharge is Entered) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | ☐ ADVISED OF RIGHTS | METHOD OF SERVICE: | | | | | |
| ARGES MBER | WAIVER INDT. / JURY | PLEA | DATE OF PLEA | ADJUDICATION OR COND.DISCH. | DATE | COND. DISCHARGE TERM | JAIL TERM | FINE | COSTS | PROBATION TERM | SUSP. IMP. |
| 1 | | | | | | | | | | | |
| MBER | | | | | | | | | | | |

| OTHER COURT ACTION | Total DEDR Penalty Amount: | | Total Violent Crimes Assessment Amount: | |
|---|---|---|---|---|
| ATE | Total Lab Fee | Conditional Disc. Fee | DL. Susp. | Institution to Which Sentenced |
| ATE | Community Service | Restitution | | JAIL TIME |

Exhibit A

15 day of 05 20 2006 in   ATLANTIC CITY   | 0102 | County of ATL N.

did;

**WITHIN THE JURISDICTION OF THIS COURT, COMMIT THE OFFENSE OF THEFT BY UNLAWFULLY TAKING OR EXERCISING CONTROL OVER CERTAIN MOVEABLE PROPERTY, TO WIT, A GAMING VOUCHER BELONGING TO SHARON FEDACZYNSKY VALUED AT $140.25 WITH THE INTENT TO DEPRIVE THE OWNER THEREOF, SPECIFICALLY BY REDEEMING THE VICTIMS SLOT VOUCHER WHILE SHE LEFT THE MACHINE UNATTENDED.**

In Violation Of:                     ☐ Domestic Violence - Confidential

| Charge Number | 1 | | Charge Number | | | Charge Number | | |
|---|---|---|---|---|---|---|---|---|
| N.J.S. | 2C:20-3A | ACSX | N.J.S. | | ACSX | N.J.S. | | ACSX |
| Charge Number | 1 As Amended | | Charge Number | As Amended | | Charge Number | As Amended | |
| N.J.S. | | ACSX | N.J.S. | | ACSX | N.J.S. | | ACSX |

Subscribed and sworn to before me this 15 day of Ma 20 06

Signed _____ # 5524   (NAME AND TITLE OF PERSON ADMINISTERING OATH)   Signed _____   (COMPLAINANT)

**YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THIS COURT TO ANSWER THIS COMPLAINT. IF YOU FAIL TO APPEAR ON THE DATE AND AT THE TIME STATED, A WARRANT WILL BE ISSUED FOR YOUR ARREST.**
DATE SUMMONS ISSUED  05/15/2006  DATE TO APPEAR  05/30/2006  TIME  09:00  A

_____ (SIGNATURE PERSON ISSUING SUMMONS)    CCA   TITLE

---

FIRST-APPEARANCE    COURT ACTION (Where Judgement or Conditional Discharge Is Entered)
☐ ADVISED OF RIGHTS    METHOD OF SERVICE:

| CHARGES NUMBER | WAIVER INDT. / JURY | PLEA | DATE OF PLEA | ADJUDICATION OR CONV./DISCH. | DATE | COND. DISCHARGE TERM | JAIL TERM | FINE | COSTS | PROBATION TERM | SUSP. IMP. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | DSM 7-26-07 | | | | | | | |
| NUMBER | | | | | | | | | | | |
| NUMBER | | | | LS | | | | | | | |

OTHER COURT ACTION | Total DEDR Penalty Amount: | | Total Violent Crimes Assessment Amount: |

| DATE | DISM. OR DISCHARGED AS TO PROBABLE CAUSE PROSECUTOR GIVEN PRIOR NOTICE | Total Lab Fee | Conditional Disc. Fee | DL. Susp. | Institution to Which Sentenced |
| DATE | COMPLAINT REFERRED TO PROSECUTOR | Community Service | Restitution | | JAIL TIME CREDIT |

Domestic Violence: RESTRAINTS (SPECIFY)  ☐ NO PHONE OR PERSONAL CONTACT WITH VICTIM  ☐ NO POSSESSION FIREARMS / WEAPONS   Other (specify)

(FTA OR BAIL) INFORMATION   ☐ BAIL FORM ATTACHED

| DATE | AMOUNT BAIL SET | REL. ON BAIL | R - O - R | COMMITTED DEFAULT | COMMITTED WITHOUT BAIL | PLACE COMMITTED |
| | | 1 | 2 | 3 | 4 | |

SURETY COMPANY - PERSON POSTING BAIL - RELEASED IN CUSTODY OF - ADDRESS

PROSECUTING ATTORNEY AND DEFENSE COUNSEL INFORMATION

| PROSECUTING ATTORNEY | NONE 1 | STATE 2 | COUNTY 3 | MUNICIPAL 4 | OTHER 5 | DEFENSE COUNSEL | NONE 1 | RETAINED 2 | PUBLIC DEFENDER 3 | ASSIGNED 4 | WAIVED 5 | OTHER 6 |

MISCELLANEOUS INFORMATION

1st Companion CDR numbers (including Co-defendants).

06 MAY 22 AM 9:12

RECEIVED AT ANTIC CITY MUNICIPAL COURT

JUDGE                                            DATE

EXHIBIT "C"

DETAINER TO: _____ ____          * BENCH WARRANT

STATE OF NEW JERSEY                          : SUPERIOR COURT OF NEW JERSEY
                                             : LAW DIVISION - ATLANTIC
                                             : CRIMINAL PART
             VS.                             : INDICTMENT NO: 54-08-01849-B
                                             : PROSECUTOR'S NO: 94003097-001 SEQ: 03

HICKSON, EARL D                              :
AKA:                        DEFENDANT:       :      ORDER(S) FOR:
IND NAME: HICKSON, EARL D                    : 1. ISSUANCE OF BENCH WARRANT
227 ROBERTS STREET                           : 2. FORFEITURE OF BAIL (R3-26)
WILDWOOD NJ  082600000                       ... ...  .... ............. . . ...
                                             : FINANCE DEPT USE ONLY - PREV     :
                                             : POSTED $$ AVAILABLE FOR FORFEIT  .
DOB: 12-12-61   SBI#: 915707B  SEX: M        : POST TIME:                       :
SS#: 052586125  ODOA: 07-17-94 HGT: 603 : CABS #                               .
FBI:            HAIR: BLK      WGT: 165 : RECOGNIZANCE#                         :
SPN: 045960     RACE: B        EYE. BRO : FORFEITURE: $                         .
                                             . . ..... ........................

DEGREE - CHARGES:                            CRGS ORIGINALLY ATLANTIC CITY

3  THEFT BY UNLAW TAKING

The defendant, EARL D HICKSON having failed to appear on NOVEMBER 11, 2003,
for ENFORCEMENT HEARING and the Court being satisfied that a condition of
bail has been breached by the defendant's failure to comply with or appear for
the above listed;

        IT IS ON NOVEMBER 11, 2003, ORDERED that a Bench Warrant is issued
        and previously set bail is forfeited.

        IT IS ALSO ORDERED the above listed defendant is to be taken into
        custody by the Sheriff of ATLANTIC or any Law Enforcement officer
        and returned to the Superior Court of ATLANTIC County.

SPECIAL CONDITIONS:
-CONDITIONS OF RELEASE, PAYMENT OF MONIES DUE IN THE AMOUNT:$ 127

                                    ALBERT J GAROFOLO
                                    -----------------------------------
                                    JUDGE OF THE SUPERIOR COURT


EXECUTED THIS _____ DAY OF _____ , 20_____ .

EXECUTED BY.                                  ARRESTING AGENCY:

DETAINER TO: _____ ____          * BENCH WARRANT

STATE OF NEW JERSEY                           : SUPERIOR COURT OF NEW JERSEY
                                              : LAW DIVISION - ATLANTIC
                                              : CRIMINAL PART
            VS.                               . INDICTMENT NO. 01-10-02107-BCP
                                              : PROSECUTOR'S NO. 00001897-004 SEQ. 01

HICKSON, EARL D
AKA:                        DEFENDANT  :        ORDER(S) FOR:
IND NAME: HICKSON, EARL D                     : 1. ISSUANCE OF BENCH WARRANT
227 ROBERTS STREET                            : 2. FORFEITURE OF BAIL (R3-26)
WILDWOOD NJ  082600000                        .... .. ........ ..... ..............
                                              : FINANCE DEPT USE ONLY - PREV     .
                                              : POSTED $s AVAILABLE FOR FORFEIT  :
DOB: 12-12-61   SBI#: 91570~B  SEX: M         : POST TYPE:                       :
SS#: 052586125  ODOA        . HGT: 603 : CABS #                                  :
FBI:            HAIR: BLK    WGT: 165 : RECOGNIZANCE#                            :
SPN: 045960     RACE. B      EYE: BRO : FORFEITURE: $                            :
                                              .................................. ....


DEGREE - CHARGES:                        CRGS ORIGINALLY ATLANTIC CITY   .

2  THEFT BY DECEPTION

The defendant, EARL D HICKSON having failed to appear on NOVEMBER 12, 2003,
for ENFORCEMENT HEARING and the Court being satisfied that a condition of
bail has been breached by the defendant's failure to comply with or appear for
the above listed,

        IT IS ON NOVEMBER 12, 2003, ORDERED that a Bench Warrant is issued
        and previously set bail is forfeited

        IT IS ALSO ORDERED the above listed defendant is to be taken into
        custody by the Sheriff of ATLANTIC or any Law Enforcement officer
        and returned to the Superior Court of ATLANTIC County

SPECIAL CONDITIONS:
-CONDITIONS OF RELEASE, PAYMENT OF MONIES DUE IN THE AMOUNT:$ 157


                                        ALBERT J GAROFOLO
                                        ---------------------------------
                                        JUDGE OF THE SUPERIOR COURT

EXECUTED THIS _____ DAY OF _____ , 20

EXECUTED BY:                            ARRESTING AGENCY.
        _____                _____

DETAINER                               Commit # 141644

CJIS 2000 Response

JAIL

# CJIS 2000 Response

Powered by CICS Web Services

### New Jersey Wanted Person Response

```
05/15/2006  17:19:07
1L01
NJNSPF2A2

MKE/NJ WANTED PERSON
NAM:HICKSON,EARL D                    DOB:12/12/1961  SEX:M  RAC:B

****    NEW JERSEY WANTED PERSONS INQUIRY RESULTS    *****

======= MATCH FOR NAME: HICKSON,EARL D                    =======

AUTHORITY ORI/NJ0010000  ATLANTIC CO SHERIFF'S OFFICE
DATE OF ENTRY/11-22-2003

WANTED PERSON

NAM/HICKSON,EARL D
POB/NY  DOB/12-12-1961  SOC/052586125
SEX/M  RAC/B  HGT/603  WGT/168
EYE/BRO  HAI/BRO  SMT/SC L EYE
FPC/DO15POPO15DIPIPI1915  MNU/OA-915707B
OCA/940801839  DOW/11-11-2003  WNU/940801839B
VIO/I  STA/2C:29-7  BAIL JUMPING

            SUPPLEMENTAL INFORMATION TO FOLLOW

CAUTION/MEDICAL CODES:
    99   CHECK TEXT INFORMATION

ALIAS NAMES:
    JACKSON,DENNIS
    JACKSON,DENNIS E

DATES OF BIRTH:
    09-16-1963

SOCIAL SECURITY NUMBERS:
    052586123
    058526124

MISCELLANEOUS NUMBERS:
    PI-CT00863481

ADDITIONAL INFORMATION:
    CAUT/AGG ASSLT WEAP
    FBI/314754WA5
    ALSO IND/011002107BCP FTA EM THEFT BY UNL TAK
```

NO.857  P01

P841-09726 05/15/06 1732

*********************** PRIORITY MESSAGE ***************************

288P
0163 FILE 13 SP INTELL CASINO GAMING BUREAU    NJNSPF200 05/15/06

HIT CONFIRMATION REQUEST - CONFIRM WITHIN 10 MINUTES

TO/ ATLANTIC CO. SHERIFF'S OFFICE

NIC/SIC/ W127953041  OCA/ 940801839

WANTED PERSON  -  NAME/ HICKSON,EARL D
                   DOB/ 12121961 RACE/ B SEX/ M SSN/ 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

REMARKS FROM LOCATING AGENCY/
SUBJECT IS CURRENTLY IN CUSTODY AT HARRAH'S CASINO FOR THEFT. ANY
QUESTIONS, PLEASE CONTACT DET. KOSKO #4S40 AT 609-441-7464. THANK
YOU FOR YOUR COOPERATION IN THIS MATTER.

PLEASE PROVIDE A SUBSTANTIVE RESPONSE WITHIN 10 MINUTES - POSITIVE OR
NEGATIVE CONFIRMATION OR A NOTICE OF THE SPECIFIC AMOUNT OF TIME
NECESSARY TO CONFIRM OR REJECT THIS HIT.

SENDING AGENCY/ SP INTELL CASINO GAMING BUREAU  NJNSPF204  P841    171933  JW
**************************************************************************

288P-59526 05/15/06 1737

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* PRIORITY MESSAGE \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

P841
06-0618 FILE 14 ATLANTIC CO SHERIFF'S OFFICE          NJ0010000  05/15/06

HIT CONFIRMATION RESPONSE - REFERENCE

TO/ SP INTELL CASINO GAMING BUREAU

NIC/SIC/ W127953041   OCA/ 940801839

WANTED PERSONS - NAME/ HICKSON,EARL D
                 DOB/ 12121961  RAC/ B   SEX/ M   SSN/ 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

                         HIT IS CONFIRMED

CONFIRMATION/EXTRADITION REMARKS FROM RESPONDING AGENCY/

PLEASE USE THIS TELETYPE AS DETAINER
THANK YOU   SGT ABERMAN ASCO  FUG/DIV

SENDING AGENCY/ ATLANTIC CO SHERIFF'S OFFICE.....NJ0010000  288P......173510 VAL
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EXHIBIT "D"

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 44 of 119 PageID: 1742
Case 1:09-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 1 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 1 of 70

Earl D. Hickson

719 B Kentucky Avenue

Atlantic City, New Jersey, 08401

(609) 335-1583

Plaintiff, Pro-Se

# UNITED STATES DISTRICT COURT
## DISRTICT OF NEW JERSEY

|  |  |
|---|---|
| Earl D. Hickson<br><br>       Plaintiff,<br><br>Vs.<br><br>Marina Associates d/b/a Harrah's Casino Hotel Atlantic City<br>l/s/h/a Harrah's Hotel and Casino a/k/a Harrah's Atlantic City<br>Security Shift Manager, Alexander Lovas,<br>Security Officer, Vance Thompson,<br>Surveillance Supervisor, Anna Haag<br>Josh Lechtblau, Director, State of NJ Division of Gaming Enforcement<br>Mark Kosko, Badge# 4540, NJ Division of Gaming Enforcement,<br>George Morton, Esq.,<br>       Defendant(s) | CIVIL ACTION NO. 08CV2407 (NLH)<br>Hon. Noel Hillman/Karen M. Williams<br><br>Third Amendment to Complaint and Jury<br>Demand Pursuant to FRCVP 15 (a) through (d),<br>and July 1, 2009, Proceedings Before U.S.M.J.<br>Karen M. Williams. |

       **Plaintiff,** Earl D. Hickson, for his third amendment to his complaint, as timely filed on May 15, 2008. Does here within claim against the above captioned defendants, individually, in their professional capacities, and as co-conspirators of Harrah's Hotel and Casino and other official State Roe, States as Follows:

1

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 45 of 119 PageID: 1743

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 2 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 2 of 70

## Contents

INTRODUCTION ........................................................................................................ 3

JURISDICTION AND VENUE .................................................................................... 5

PLAINTIFF'S STATEMENT OF THE FACTS ............................................................ 6

FIRST COUNT ......................................................................................................... 22

SECOND COUNT ................................................................................................... 26

THIRD COUNT ....................................................................................................... 30

FOURTH COUNT ................................................................................................... 32

FIFTH COUNT ........................................................................................................ 34

SIXTH COUNT ....................................................................................................... 35

SEVENTH COUNT ................................................................................................. 37

AD DAMNUM CLAUSE ......................................................................................... 40

Wherefore ............................................................................................................. 41

JURY DEMAND ..................................................................................................... 42

CERTIFICATION .................................................................................................... 42

### Table of Abbreviations

| | |
|---|---|
| C.C.C. | New Jersey Casino Control Commission |
| CCTV | Closed Circuit Television System |
| DGE | New Jersey Division of Gaming Enforcement |
| FRCVP | Federal Rule of Civil Procedure |
| N.J.C.C.J | New Jersey Code of Criminal Justice |
| N.J.A.C | New Jersey Administrative Code |
| N.J.S.A. | New Jersey Statute Annotated (or N.J.Stat.) |
| Pls.S.F. | Plaintiff's Statement of Facts |

That, for his complaint, which can now be stated to show each defendants conduct and identify said defendant by name, in the interest of justice, pursuant to FRCVP 15 (a) through (d), Doctrine of Entire Controversy and in conformity with the evidence that has and is still being withheld by the defendants Plaintiff says:

## INTRODUCTION

Illegality normally seeks cover, but conspirators may act openly or not, as best suits their purpose. Plaintiff will show that those involved herein operated under the guise of openness, to present an illusion of authority, to conceal the illegality of their constitutional and state statutory violations, as well as what can be labeled as criminal activity.

The defendants objective was and still is the unlawful denial of access to public accommodations, taking and/or granting the casino industry an unfair advantage to the privileges granted by N.J.A.C. 19:45-1.37C, and concealment of the casino industries State issued license to commit theft through the use of laws drafted and designed with the intent to grant said unfair advantage and provide immunity to said casino licensee's.

To affect their customary scheme, the cohorts resort to: Racial profiling; discrimination; false arrest; kidnapping; coercion; denial of access to the Courts and violation of the State of New Jersey Rules of Court. The cohorts will also violate the provisions of the Constitution of the United States of America by denying individuals their liberty; right to acquire and possess property; right to be free from unreasonable search and seizure, equal protection of State and Federal laws and promulgating laws that are contrary to the United States Constitutional Amendment XIV Section 1.

Discipline may be needed for a secret conspiracy in order to keep it secret. The thrust of conspiracy, however, is in the agreement for joint action, not in the method of accomplishing it.

Scales v. United States, 367 U.S. 203, 225 81S. Ct. 1469, 2484 (1961). The "General principle is that society having the power to punish dangerous behavior cannot be powerless against those who work to bring about the behavior." The band of cohorts operates contrary to this holding to instill a sense that one cannot oppose the casino industry and win. This is only due to the industries hold on the economy of the State and its influence on the Judiciary of New Jersey in Atlantic County.

It is not difficult to visualize conspirators whose basic ends are plainly illegal, but who color them in order to obtain needed support of others, innocent and well intentioned, by adding lawful and popular objects.

As held by United States v. Spock, 416 F. 2d. 165, 173 1st. Cir (1969): When the alleged agreement is both bifurious and political within the shadow of the First Amendment, we hold that an individual's specific intent to adhere to the illegal portions may be shown in one of three ways: By the individual defendants prior or subsequent unambiguous statements; by the individual defendants subsequent commission of the very illegal act contemplated by the agreement; or by the individual defendants subsequent legal act if that act is "Clearly undertaking for the specific purpose of rendering effective the later illegal activity which is advocated." Scales v. United States, 367 U S. at 234, 81S. Ct. at 1488.

3

Case 1:08-cv-02407-NLH-KMW    Document 58-1    Filed 04/28/10    Page 47 of 119 PageID: 1745
Case 1:08-cv-02407-NLH-KMW    Document 36    Filed 12/14/09   Page 4 of 70
Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009   Page 4 of 70

## EVIDENCE WILL SHOW

1.    Defendants prior or subsequent and unambiguous statements.

2.    Defendants commission of the very illegal act contemplated by the agreement.

3.    Defendants subsequent legal acts that are clearly undertaken for the specific purpose of rendering effective the later illegal activity which is advocated.

This evidence will suffice to take the defendants to a jury for it will show: First, evidence of an agreement; second, the agreements contemplated or included illegal activity and third that the defendants individually adhered to that illegality. As concluded by U.S. Phelatelic Leasing, 601 F.Supp. 1554, at 1565-66:

### *CONCLUSIONS OF LAW*

*Two interrelated legal principles govern the conclusions to which the foregoing findings lead us. The first of these, which Wigmore has described as "one of the simplest in human experience" is that [HN3] when a litigating party resorts to "falsehood or other fraud" in trying to establish a position, the court may conclude the position to be without merit and that the relevant facts are contrary to those asserted by the party. " The second is that where a party withholds (or seeks to suppress) relevant evidence within its control, the court [*1566] may conclude that such evidence would be harmful to the party's cause.*

4

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 48 of 119 PageID: 1746

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 5 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 5 of 70

## JURISDICTION AND VENUE

1. **Marina Associates d/b/a Harrah's Casino Hotel Atlantic City i/s/h/a Harrah's Hotel and Casino a/k/a Harrah's Atlantic City,** is a corporation duly licensed to do business under the laws of the State of New Jersey, with its principal place of business at 777 Harrahs Blvd., in Atlantic City, In the County of Atlantic and State of New Jersey.(Here in after referred to as Harrahs)

2. **Alexander Lovas, Vance Thompson and Anna Haag** were employees, agents, and or co-conspirators of Harrah's Hotel and Casino.

3. **Josh Lechtblau, Director, State of NJ Division of Gaming Enforcement,** is the director of the State of New Jersey Division of Gaming Enforcement, which is a duly established department in the Department of Law and Public Safety pursuant to N.J. Stat. 5:12-55. Upon my further research it is principally located at 1300 Atlantic Avenue, Atlantic City, NJ 08401.

4. **Mark Kosko, Badge# 4540, NJ Division of Gaming Enforcement,** is an employee and member to the NJ State Police assigned to the Casino Investigations Unit or the Division of Gaming Enforcement with offices at 1300 Atlantic Avenue, Atlantic City, NJ 08401.

5. **George Morton, Esq.,** is a member of the New Jersey Bar and licensed by the State of New Jersey, with his place of business being at 5914 Main Street in Mays landing, New Jersey, 08330.

6. **Plaintiff, Earl D. Hickson,** is an African-American citizen of the United States of America. Resident of the state of New Jersey, in the county of Atlantic, resides in the city of Atlantic City and was an invitee and patron of Harrah's Hotel and Casino of May 15, 2006.

7. This court has **original jurisdiction** over this matter pursuant to 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1391(a), (b), and (c) and exclusive of interest and costs the matter in controversy exceeds the sum of $75,000.

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 49 of 119 PageID: 1747

Case 1:09-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 6 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 6 of 70

# PLAINTIFF'S STATEMENT OF THE FACTS

## (Here in after referenced as PLs.S.F)

8. On May 15, 2006, I Earl Hickson, Plaintiff Pro-Se, was a patron of Harrahs Hotel and Casino in Atlantic City New Jersey. I arrived at Harrahs around 11:30 am, and after wagering throughout the day, at about, or between 3:30 pm to 4:00 pm, I approached an abandoned slot machine.

9. There was no one to either side of the aisle, and I did not remove any article from the chair, nor did I remove any previous player's card from the area on or about said slot machine. From my vantage point, there was nothing to indicate any other patron's expectation of privacy to said slot machine.

10. I proceeded to insert my voucher from a previous machine I had played into the slot machine before me. My voucher was for one dollar and sixty-five cents.

11. After insertion, I retrieved the voucher for the residual fifteen cents, which could not be wagered at this quarter machine.

12. I caused the reels to spin three to four times. Realizing I had gained, I pressed the cash out button and proceeded to locate a cashier.

13. Upon entering the next aisle, I heard a voice call from behind me "sir--sir, did you take my money?" Not knowing this woman upon turning to her, I recounted my prior actions at the slot machine I had just vacated.

14. By way of the complaint #S-2006-005766-0102, this woman was identified as Sharon Fedaczynsky. No address given.

15. She says she was playing the same machine. Being that the aisle was empty when I entered the area; I felt no threat to any winnings I had claimed. I showed her the two vouchers in my hand. She looked at them; we both realized one was blank. She said, "no--no, I had a hundred something dollars," realizing we both were out money I told her to find a slot attendant. I went to the nearest house phone, keeping her in view, to page a friend that had invited me to dine with them.

6

Case 1:08-cv-02407-NLH-KMW  Document 58-1  Filed 04/28/10  Page 50 of 119 PageID: 1748

Case 1:08-cv-02407-NLH-KMW  Document 36   Filed 12/14/09  Page 7 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 7 of 70

16. While awaiting an answer to my page I heard another voice behind me. The voice demanded that I "get off the phone--- I said get off the phone." I thought "oh my God now this woman and her husband or boyfriend wants to cause a scene.

17. Upon facing the athletic build before me my eyes catch the embroidered security badge on his chest. Without stating who he was the officer restates, "I said get off the phone, we have you on video stealing that lady's money."

18. Once more the first officer says "get off the fucking phone, we got you on camera stealing that lady's money--we can do this the easy way or the hard way." I asked what you mean by that.

19. The other officer interjects "look brother take the easy way and just give us the ticket and you can go, we got you on camera."

20. I tell the two officers "first I have not violated any laws, nor have I stolen anything from anyone. I was attempting to cancel a dinner invitation so that I could resolve the matter with the woman in question, however it is obvious you have made your assumptions please call the police or release me."

21. The first officer states "oh we're going to call D.G.E. once we get you upstairs"--I reply "you're crazy if you two think I'd go up to some hidden area with you two, not that I'm afraid cause if either of you put your hands on me I will defend myself", and to show all the people watching as well as any cameras they might have recording, I placed both my hands in my front pockets to pose no threat to the two officers.

22. They both continue to badger me for the next thirty minutes to an hour. During which time I inquired as to their full names.

23. The black officer stated: "you don't need to know our names," so I asked him "what are you ashamed of your name?"

24. I informed the officers I was going into my shoulder bag to get a pen and paper to write down their names for future reference. I wrote officer Alexander's on the front of the jacket to my greyhound bus ticket.

25. Since they would not properly identify themselves, I asked if I was under arrest--to no reply. Feeling confined I informed them or my intentions to catch a bus to Raleigh, North Carolina.

7

26. The black officer says, "You're not going anywhere till you give up the ticket." I put my right hand up and told him "you can talk to my hand, just get the police here so that I can feel safe, I've read about casino security guards like yourselves killing an Asian person at Trump Plaza and someone will get hurt here today because I'm a man of principles and I can defend myself very well." (See Exhibit T)

27. At that point, I re-inserted my hands into my pockets. By this time both officers are clinching their fists in anger. Knowing my hands are in my pockets, I take a step back to give myself time to raise my guard if attacked.

28. Upon stepping back the black officer says, "don't even think about running anywhere, we can use any force we want". I told him "I'm not running anywhere, you just call the police so I can have someone knowledgeable of the law till then I have nothing else to say."

29. The D.G.E. officer approaches me, introduces himself as officer "Kosko." Shows me his badge and assumes the good cop role. I explain my side, he listened. He said "you know they have everything on tape, so tell me the truth." I told him good, and then you'll see I took nothing from anyone.

30. At that point, I was led up the escalator with the two goons in tow. I felt no choice but to comply with their authority. I assumed officer Kosko would perform a proper investigation, which the two Harrahs officers never attempted while holding and attempting to provoke me.

31. Not once did the two officers from Harrahs ask my name, did I have a player's card, or contact anyone over their radios as to what progress an investigation was making.

32. The D.G.E. officer directs me to a room after we got off the escalator and made a right. I entered the room and was directed to the left into another small room, which was clearly a holding area.

33. The D.G.E. agent said he was going to view the surveillance tape, and he left. While he was out, I sat listening to what are now three to five Harrahs security officers swap accounts of how they tackle "niggers and beat up seagulls." This banter was clearly meant to scare me, so I stayed on guard, praying to God for strength if attacked.

34. The D.G.E. agent returns. He says to me "let's do this the easy way, just give me the ticket and you can go." I think to myself, another one with the easy way or the hard way."

35. I reach into my front pocket and show him the vouchers I had. He looked at them and returned them to me.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 52 of 119 PageID: 1750
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 9 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 9 of 70

36. One of the Harrahs security officers yells out "check his briefcase, he went in it earlier, obviously referring to when I wrote officer Alexander's name on my bus ticket jacket.

37. Knowing I had not placed anything in my bag and being under Harrahs security's observation the entire time, I told ofc. Kosko, "I do not have any weapons or illegal substances in my bag, and because I'm separated from it—it poses no threat to you or anyone here and I expect privacy to my personal property.

38. He said "I can search where I want" and proceeds to search my briefcase. Upon not finding the object of his search he slams my bag on the counter, comes into the room where I am and say, "I can see you want to do this the hard way. He handcuffed me to the bench.

39. Ofc. Kosko goes back to the other room and tells the woman he can't find the voucher. Irate at my treatment, I yell out "because it's the blank one I have here—and if any of you were concerned about the truth, you'd show me a little respect and this could be resolved in a civil manner."

40. The woman asks ofc. Kosko will she have to come all the way back here to go to court. Officer Kosko tells her, "oh you won't have to come to court; the State will pick up the case, and we have him on tape." He proceeds to tell her that a slot supervisor will be up to pay her and she can be on her way.

41. She leaves and the D.G.E. agent (ofc. Kosko) is joined by another D.G.E. officer, who takes my picture. Harrahs security joins them and takes my picture as well.

42. Ofc. Kosko returns to the other room, I hear him pick up the telephone and ask for "surveillance." Upon them answering, he says "hi Anna, I'm going to need a copy of that tape."

43. She must have replied for he pauses, and then I hear him say, "no—no, all I'll need is him leaving the slot machine."

44. A few minutes pass and ofc. Kosko enters the room where I am. He says "ah, you have a warrant for your arrest Mr. Hickson. For violation of probation." I ask him the date the warrant was issued. He replies Nov. of 2003.

45. At that point, I tell ofc. Kosko "listen in 2000 I was falsely arrested as I am here, after two years and seven months, I represented myself before Judge Isman. I have release documents that are signed by me, Judge Isman, and Jill Moyer that state I had no probation or any restrictions." I also informed him that I was not released until after I had filed a lawsuit in the civil court detailing how there was a conspiracy to violate my Constitutional Rights.

9

46. He states, "I know Jill, she got married so her name is not Moyer any longer, -- if you pissed her off that will explain the warrant." I told him-- you do what you got to do but if you're arresting me for a non-existing or illegal warrant, you're making a career mistake.

47. Upon being escorted out the room handcuffed, the black officer says "by the way I'm not ashamed of my name," and he stated it. I was so upset at this point that it went in one ear and out the other.

48. We arrive at the Atlantic County Justice Facility around 8pm. Upon exiting ofc. Kosko's green van I ask him, "do I get a copy of the summons"? See (**Exhibit A**).

49. We walked back to his van to retrieve the summons. He lifts the top copies and signs my green copy. I was processed and held at the County for eleven days. During which time I never received copy of the warrant, never went before a judge, and was released without release paperwork. This was done after being verbally abused by the captain who told me he could not, nor was he authorized to give me copies of any documents, and I should exit the building or be thrown out.

50. On May 30, 2006, I went to the Municipal Court in Atlantic City, N.J. to answer the summons before Judge Weeks.

51. When asked by Judge Weeks if I understood the charges against me. I answered in the affirmative. I stated that I would be representing myself in all matters before the court.

52. I also stated before Judge Weeks that I claim the "affirmative defense" pursuant to N.J.C.C.J. 2C:20-2(c) (1) (2). I then served upon the prosecutor (Mr. Freed) a letter requesting the States discovery. Mr. Freed told the judge that there is a twenty-dollar fee for the discovery. He says the normal fee was ten dollars but there is a video tape, which requires duplication.

53. Upon mention of the video tape, I state on the record that the tape in the prosecutor's possession may be falsified, because I overheard ofc. Kosko tell Anna that he only needs copy of me leaving the slot machine. I also state that considering the length of time I was held at Harrahs, and the distance between the slot machine and the telephone, at which I was surrounded, there would have to be at least three cameras involved in any video presented to show the totality of the entire incident. Anything less would indicate tampering with physical evidence, withholding and or destruction of exculpatory evidence and an attempt to conform the evidence to fit a false charge.

10

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/20/10   Page 55 of 119 PageID: 1753

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 11 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 11 of 70

54. Judge Weeks states that my next court date would be set for trial and ordered that the prosecutor and I work out discovery. Mr. Freed and I exit the courtroom. I inform Mr. Freed of my indigence. He says "I could recommend the charge be reduced to a trespass, and you'd only have to pay a fine and Court cost and this will be over." I reply that any offers from his office will have to be in writing.

55. On or about June 26, 2006, I make my second appearance before Judge Weeks, without copy of the States discovery. In my haste to secure knowledge to defend myself I neglected the Municipal Court rule, which states I had to file for indigence. I thought in the interest of justice, the discovery fee would be relaxed.

56. Upon being called, the Judge asked Mr. Freed if he was ready to proceed with trial. Mr. Freed says that his witness, the State Trooper, is not in the courtroom. The Judge asks where he is and did you notify him?"

57. Prosecutor Freed tells the Judge yes, and he does not know what has happened to Ofc. Kosko.

58. The Judge tells the prosecutor "I'll set this case aside till this afternoon, you call your witness and get him in here". That afternoon Mr. Freed told Judge Weeks that he spoke with officer Kosko, and he was out of the area.

59. I stated on the record, "you're Honor I doubt that story, and if I were not to show up you would issue a warrant for my arrest." The Judge gives some excuse to the effect that things happen and says he will set a new trial date.

60. The notification of my next trial date never came in the mail. In its place on or about Aug. 6, 2006, I was informed by Herbert Williams that I received a notice from the Court that a warrant has been issued for my arrest.

61. I continued my legal research at the law library within the Civil Courthouse in Atlantic City, on Bacharach Blvd. Once I felt there were no rebuttals to my defense and all questions of law were sealed I would answer the warrant. Which I did by way of Motion to Dismiss for Lack of Probable Cause and Order to Vacate the Warrant. See (**Exhibit B**).

62. The motion was drafted with a return date of July 6, 2007. On July 6, 2007, I arrived at the municipal court at 8:45am to find that my name was not on the docket. When Judge Week's courtroom door was opened, I went in to speak with the Courtroom Clerk. I gave her my name, showed her a copy of my motion, and stated I was there to have the motion heard. She says she did not have my case before her. She instructs me to go to window#1.

11

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 56 of 119 PageID: 1754
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 12 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 12 of 70

63. I arrived at window #1, where the same clerk that assured me the motion would be filed sat. I explained that I was there to have the motion heard. She says "yes I remember you were here the other day and I filed it. I then explained that Judge Weeks court clerk did not have my case file. She types into her computer, and say's "you have an open warrant." I reply that I was aware of that and showed her that the motion addresses that fact as well. She says "well I can't find your case file; you'll have to go to the phone around the corner, and speak with a supervisor. The supervisor was not in. I go back to Judge Week's courtroom.

64. Once again, I'm instructed to go to window #1 or call the supervisor again. I chose the latter. This time the supervisor answers-- upon the mention of a motion she says "is this Mr. Hickman," I correct her. She says "I'm looking for your case file right now--but you have an open warrant from last year." I say yes, I'm aware of that. I ask her would the court have to have had my case file to issue the warrant. She says yes. So I ask her "how many defendants do you get with open warrants, walk into the court, file a motion, and serve copy upon the prosecutor, risking arrest, unless they are present to answer the charges." I further ask, if the judge does not have my case before him, what is the likely-hood he will call my name to hear my motion. She replies that she can't look for my case all day, go to window #1 and she will send a form over to the judge to address the warrant.

65. When I get back to the courtroom, the Judge is calling his caseload. Suspecting my name wouldn't be called I decided to write a note to the Judge. I give the note to the bald African-American bailiff. He gives it to the courtroom clerk, who places it beside the judge's telephone.

66. The Judge picks up the note, reads it, and calls me by name. I stand, with copy of motion in hand, and state my intent to have the motion heard. "I don't have your case file before me," the Judge replies. "It's my understanding they are looking for it now." He instructs the courtroom clerk to call and find out if the file was located, so that he can address my case after he attends to video court.

67. The Judge returns from video court, he asks the clerk, "have they located Mr Hickson case?" She replies "I do not have it yet." At that point I turn to a friend and say "Larry, see this is the "B.S." they use to frustrate pro-se defendants. I ask him to stay so I'll have a witness to this loss of convenience.

12

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 57 of 119 PageID: 1755

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 13 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 13 of 70

68. After lunch when I'm called, the Judge says "they have yet to find your case file Mr. Hickson, but it must be in the building somewhere." Then he says, "I'm going to lift the warrant and you will be mailed a new trial date".

69. On the morning of July 18, 2007, seeking to protect the fact that I appeared on July 6, 2007, I drafted a letter to the Municipal Court Clerk requesting copy of the order vacating the warrant issued July 27, 2006. (see **Exhibit C**) In that letter I had mistakenly penned July 27, 2007, and the court clerk (Ms. Cheatham), who sat at window #2, caught the mistake. She gave me copy of the document from the computer. I thanked her for her courtesy and professionalism.

70. As hoped the "N.J. Automated Complaint System Warrant History" showed a "Recall Date" of 07-06-2007. (see **Exhibit D**) I felt secure in case there was ever a question that I had never filed or appeared to have the motion heard. Now I had proof that I appeared on July 6, 2007, the same day as the return date on the motion.

71. I received notice that my next court date would be July 26, 2007. On or about July 24, 2007, I received a letter from prosecutor Samuel Lashman. It was my copy of a letter he addressed to Judge Weeks. (See **Exhibit E**).

72. Within the letter Mr. Lashman states "briefly Mr. Hickson is charged with theft of another patrons slot voucher." Within the next sentence he states "the charges are that he obtained the voucher of a player who left the machine unattended."

73. Within the same letter Mr. Lashman exhibit's the prosecutions lack of concern for obtaining the truth. Mr. Lashman, a licensed attorney, misquotes the current state of law, by stating in writing: "In regard to the abandonment argument Mr. Hickson has put forth the argument that under N.J.A.C. 19:45-1.37, any funds less than the lowest amount of possible wager in a slot machine are deemed abandoned under "Tokenization" regulations.

74. He goes further to misrepresent the definition of tokenization. He states: "Tokenization is a process where patrons use vouchers instead of coins or cash at a slot machine" Just above N.J.A.C. 19:45-1.37 the definition of Tokenization is clearly defined for all to understand that have average comprehension. (See **Exhibit G**).

75. He (Mr. Lashman) in his letter, nor has anyone in the courtroom mentioned Ms. Fedaczynsky as a witness or complainant. Not once does the prosecution state that they have or will produce testimony from anyone associated with or employed by Harrahs Hotel and Casino.

13

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 58 of 119 PageID: 1756

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 14 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 14 of 70

76. On the second page of his letter, Mr. Lashman makes another attempt to frustrate and deter plaintiff and influence the Judge or should I say give hint as to what direction he and the Judge will take. He says that regulations have been presented to the court that define, "voucher theft and credit claiming" by stating: "further under other regulations previously cited to the court concerning abandoned funds at slot machines, pursuant to "credit claiming or voucher theft" under N.J.A.C. 19:45-1.37C, cited above which provides.......(see **Exhibit E**).

77. On July 26, 2007, at the Atlantic City Municipal Court, plaintiff withstood the co-conspirators final attempt at gaining their objectives. Upon entering Judge Week's courtroom, I noticed that there was a female prosecutor present.

78. The Courtroom Clerk made the roll call, and I said to myself--at least I'm on the list. I turned to my friend and said-- Moonie notice that the prosecutor is not in the court-room. Judge Weeks calls all the other cases to empty the courtroom.

79. Upon my name being called, I rise and approach the podium. The female prosecutor says "your Honor I'm not familiar with this case but it's my understanding we're here to hear a motion." The Judge says no we have a trial date set."

80. He turns to me and asks "are you ready for trial," I respond yes. He turns to the prosecutor and asks "are your witnesses here?" She turns to see only my friend Moonie and responds "your Honor like I said I'm not familiar with this case, I could get Mr. Lashman to find out what is going on," the Judge says "why don't you do that."

81. Mr. Lashman enters, the Judge asks him, "where's your witness?" Mr. Lashman responds, "Your Honor I thought we're here today to hear the motion filed by Mr. Hickson, I spoke with Sue"-- the Judge cuts him off, and asks "who's the Judge here—since when do you listen to Sue, and when have you known me to set a trial date and it not be a trial date--the motion could be heard and then we would go straight to trial."

82. By way of some miracle the Judge now has a copy of the motion I filed on July 2, 2007. He thumbs though it-- pauses briefly, turns to the prosecutor and asks "have you read this motion?" Mr. Lashman replies "no I have not read it Your Honor." To protect the record and the truth I respond "Your honor that's an out-right lie, I have copy of the letter addressed to you from Mr. Lashman, it makes specific reference to facts contained within the meat of the motion to dismiss," and I held the letter up.

14

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 59 of 119 PageID: 1757

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 15 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 15 of 70

83. Mr. Lashman says "Your Honor there is still the matter of discovery. Mr. Hickson has not received the videotape." The Judge asks me, do you need the tape? I said no your Honor, I only alerted the prosecution to the fact that the video tape has been tampered with as a courtesy.

84. The Judge then states that as far as the motion, I can tell you that the voucher is the property of the casino." He then turns to Mr. Lashman and instructs him to call his witness, and be ready to proceed when he returns from video court.

85. Moonie and I go outside to smoke a cigarette. When we return the female prosecutor is in the courtroom. The Judge asks her "where's your witness?" She says Your Honor the State is not prepared to proceed. I state: Your Honor I move that this case be dismissed." The Judge replies case dismissed. This dismissal has not been appealed as of this writing, nor have I received notice of any further prosecution. Just as the slot machine I approached on May 15, 2006, I must come to the conclusion that the prosecution has been abandoned by the Municipal Prosecutors.

86. From the moment plaintiff was approached by the first Harrahs security officer, I was subjected to and became a victim of the following machination and customary plan utilized and ratified by Harrahs, other members of the Atlantic City Casino Industry, and the Casino Control Commission.

### Objects of Conspiracy to be Accomplished

A. Under the color of N.J.S.A. 5:12-121, Harrah's and its agents will discriminately and arbitrarily question and detain individuals and intimidate them into believing they have been ejected from Harrah's Casino's.

B. After a patron is victimized by (A) above, Harrah's and its cohorts will do all to protect itself its agents and cohorts from liability.

C. Creation of acts appearing to grant probable cause, such as stating the victim stole slot credits, refused to leave the premises, or was disorderly.

D. Securing of a conviction by intimidating the victim to believe that he has committed a crime and his best means is a negotiated settlement.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 60 of 119 PageID: 1758

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 16 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 16 of 70

## Overt Acts or Omissions

1. A patron is stopped, questioned, asked to leave the premises without cause, or detained by a casino's agent, who acts on their own or at the behest of a superior.

2. A patron of clear legal gaming age is asked to produce I.D... Even when he or she has not won a jackpot on a slot machine, nor attempting to transact more than ten thousand dollars, is not cashing a check, requesting credit, or requesting markers, is not ordering an alcoholic beverage, nor advertising prostitution.

3. Once detained a patron is subjected to public humiliation, by being encircled by casino security. Creating public scorn and embarrassment. The patron is led off the casino floor and not given an opportunity to lodge a complaint with the C.C.C., violating the patron's right to Due Process of Law.

4. A patron is provoked to become boisterous by security personnel invading the patron's personal space, belittling them with demeaning comments, vulgarity, threats of force and use of racial slurs.

5. Interfering with and deprivation of civil rights, breech of aleatory and other gaming contracts.

6. Calling of D.G.E. to cosign or legitimize the casinos actions and issue summons on the false charges.

7. Summonsing patrons before the Atlantic City Municipal Court on false charges, when in most cases the Casino Control Commission has subject matter jurisdiction. Especially when the patrons conduct is not defined as an offense pursuant to the N.J. Code of Criminal Justice. Yet these codes are used in the false charging of the victim when they are not meant to criminalize an act deemed legal by the Casino Control Act.

8. After applying pressure and intimidation on being convicted of the false charges, the Municipal Prosecutor will offer the so called sweet deal of trespass. This deal is passed on to the Public Defender who sells it as the best way out. They will say all you'll have to do is pay court cost and stay out of the casino for (x) months or years. The victim, after being criminalized, is issued a bogus court order stating they are evicted from the complaining casino. See (Exhibit N)

9. Concealment of discovery from those using the Municipal Public Defender. While those electing Pro-se status are quickly prodded into a plea to prevent the release of irregular and lacking discovery.

10. The Office of the Public Defender, The Municipal Prosecutors Office and the Municipal Court Judges will take deliberate indifference to ones Constitutional Rights, the Rules of Professional Conduct, Judicial Cannons and the New Jersey Rules of Court. Not to mention rules of evidence, and the statutes themselves. By this line of corruption casinos can ignore the rules, have false evidence presented and avoid having their agents testify in open court proceedings.

11. The Municipal Court will not judicially notice relevant statutes, provisions of the Casino Control Act, New Jersey Administrative Codes or persuasive case law. The public defender will never ask the court to take judicial notice of laws that would halt and or kill the Municipal Courts cash cow (collecting $158.00 per case).

12. The Casino Control Commission will promulgate and have legislation passed that is tailored to aid the casino industry in effectuating this machination.

16

Case 1:08-cv-02407-NLH-KMW    Document 58-1    Filed 04/28/10    Page 61 of 119 PageID: 1759
Case 1:08-cv-02407-NLH-KMW    Document 36    Filed 12/14/09    Page 17 of 70
Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009    Page 17 of 70

87. Within the Municipal Court in Atlantic City, N.J. there should be within the case file to complaint #S-2006-005766-0102, and in possession of the Municipal Prosecutors Office:

   a. One letter dated 5/30/06 from Earl Hickson in the form of Demand for Discovery, which was delivered hand to hand, on the record before Judge Weeks on 5/30/06. (See PLs.S.F. #51-53)
   b. Incident Reports from Harrahs Security and Surveillance agents:
      1. Incident Report of Sec. Supervisor Alexander Lovas.
      2. Incident Report of Surveillance Officer Anna Haag
      3. Incident Report of Security Officer Vance Thompson
      4. Incident Report of DGE officer M. Kosko.
   c. One video tape of the incident at issue on May 15, 2006.
   d. Copy of Motion to Dismiss for Lack of Probable Cause.
   e. Copy of two page letter dated July 20, 2007 to Judge Bruce Weeks, from Municipal Prosecutor Samuel Lashman Esq. (See **Exhibit E**).
   f. Copy of each notice to appear before the Atlantic City Municipal Court to officer Kosko for the following dates, 5/30/06, 6/26/06, 7/10/06, and 7/26/07.

88. N.J.A.C. 19:45-1.8. Retention, storage and destruction of books, records and documents—is the New Jersey Casino Control Commissions litigation hold on casino industry records and documents. N.J.A.C. 19:45-1.8(c) (4) holds: The following original books records and documents shall be retained by a casino licensee for a minimum of three years. Subsection (vi) specifically cites security incident reports. Hence the reports of security Supervisor Alexander Lovas, his back-up officer and surveillance officer Anna Haag, per this statutory litigation hold are available. As well as the master tapes from the C.C.T.V. surveillance system which was used to produce the false evidence passed along to the Municipal Court in support of the machinations completion. Unless this evidence has become subject to a loss of Convenience like the plaintiff's Motion to Dismiss on July 6, 2007, as put forth in (PLs.S.F. #62-#70) at pages 10-12 within.

89. While doing final research, in order to specifically plead this complaint, I did discover further evidence of the conspiracy to cover up my false arrest.

90. While accessing the New Jersey Judiciary Promis/Gavel Public Access, records on the Superior Courts Computer (Judiciary #320744) within the Law library at 1201 Bacharach Boulevard, Atlantic City, New Jersey, Plaintiff did discover several false entries into the public records of the New Jersey judiciary, Promis/Gavel Public Access records for cases listed under my name, Earl D Hickson.

17

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 62 of 119 PageID: 1760

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 18 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 18 of 70

91. Within the Promis/Gavel Public Access records, the case list file shows two cases material to the case at issue here. They are on page one, County Case # ATL-00001897, IND/ACC No. 01-10-02107-I, and on page two County Case # ATL-07-17-1994, IND/ACC No. 94-08-01839-I. Both of these cases show a Disposition 03-19-2003 (Exhibit K, Exhibit L) respectively.

92. In their haste to conceal my false arrest, several false entries have been made. The information within the records themselves, contradict the events that should have happened and those that did transpire.

93. Plaintiff clearly was not subject to the charges of case #00001897. Tama Hughes, D.A.G.; Judge James Isman; Attorney S. Feldman; Judge Albert Garafolo; Judge Robert Neustadter; Attorney George Morton; Prosecutor Jill Moyer; D.A.G.; Attorney William Dietrich and Attorney Eric Shenkus, would all conspire to present Plaintiff with this case in an attempt to coerce Plaintiff to plead to matters Plaintiff was being falsely held on since August 30, 2000.

94. At no time was Plaintiff served with a formal Complaint or Summons for case# 00001897. The band of cohorts failed to find an officer willing to issue a complaint or summons. This fact is evidenced by the lack of entries at Promis/Gavel Public Access: Charged Disposition, for case #00001897, **CDR NUMBER, CDRISS DATE, CDR REC DATE AND POLC CASE NO. (See Exhibit K-29).**

95. Further evidence of the conspirator's malicious intent can be seen at (**Exhibit K-26**) Promis/Gavel Public Access: Event Detail, showing an arraignment interview not held and postponed by team on December 4, 2001.

96. The "Team" knew that Plaintiff was being held at the Atlantic county Justice Facility since August 30, 2000. If a summons, complaint, or warrant was issued or initiated on May 26, 2000, in Plaintiff's name, it could and should have been served anytime after August 30, 2000.

97. This Plaintiff presents (**Exhibit K-21**) Promis/Gavel Public Access: Event Detail for case # 00001897, which shows that on March 12, 2002, the band of cohorts set forth that a Pre-Trial Conference was postponed/Adjourned due to "Defense investigation." This entry exemplifies the hubris with which the conspirators apply their craft, for no Pro-Se defendant can do any form of effective investigation from a cell within the Atlantic County Justice Facility.

Case 1:08-cv-02407-NLH-KMW  Document 58-1  Filed 04/28/10  Page 63 of 119 PageID: 1761

Case 1:08-cv-02407-NLH-KMW  Document 36  Filed 12/14/09  Page 19 of 70
Case 1:08-cv-02407-NLH-KMW  Document 32-3  Filed 08/18/2009  Page 19 of 70

98. Any trier of the fact, this Plaintiff as well as the public at large are held in shock that Superior Court Judges, Prosecutors and Public Defenders will violate clear mandates, such as N. J. Statute 2C: 44-6, which holds at (a): The court shall not impose sentence without first ordering a Pre-Sentence investigation of the defendant and according, due consideration to a written report of such investigation when required by the Rules of Court. Yet these cohorts disregarded this mandate as evidenced at the entries or the lack thereof, within the Promis/Gavel Public Access: Defendant Detail for case #00001897, showing PSI REPT ORDER- 00-00-0000 and PSI REPT COMPL 00-00-0000 at (**Exhibit K**-1).

99. On March 19, 2003, as well as on May 16, 2003, this Plaintiff did not sign nor receive a copy of any terms of probation, which would have complied with the mandate of N.J. Stat. 2C: 45-1 (f). N. J. Stat 2C:45-1 holds: The defendant shall be given copy of the terms of his probation or suspension of sentence and any requirements imposed pursuant to this section, stated with sufficient specificity to enable him to guide himself accordingly. The defendant shall acknowledge, in writing, his receipt of these documents and his consent to their terms.

100. The statements set forth at (Pls. S. F. #44 to #49) evidence and show that  Officer Kosho lied on May 15, 2006, and knew Plaintiff was not wanted for violation of probation. The records presented within the Promis/Gavel Public Access and the lack of written Order of Probation, signed Terms of Probation, and the Order of March 19, 2003 indicating the Plaintiff did not have a Term of Probation, thereby eliminated Officer Kiosk's authority to arrest Plaintiff for Violation of Probation. These facts also evidence that the entries at the Promis/Gavel Public Access: Jail screens for Case #94003097 and Case #00001897 are frauds and lacked justification. They amount to nothing more than a concealment and attempt to cover-up the false arrest and imprisonment of Plaintiff on May 15, 2006.

101. The Promis/Gavel Public Access records for case #94003097 do not reflect the events that transpired in that matter.

102. After my false arrest on July 7, 1994, Plaintiff appeared before the Court and on one single day was granted and accepted into the Pre Trial Intervention (P.T.I.) program. Plaintiff was assigned a Public Defender by the name of Raymond Lee and entered said program at his advice.

19

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 64 of 119 PageID: 1762

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 20 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 20 of 70

103.   Plaintiff was working at the Wawa on Middletown Avenue in New Haven, Connecticut. Upon being promoted to Shift Manager, the company advised me that I had a warrant for my arrest that had to be resolved before I could be promoted.

104.   To resolve the matter, I drove to the Superior Court in Mays Landing, New Jersey early in the morning. The record will show that I spent the entire day at the Court to be assigned a Public Defender, and was accepted into the P.T.I. program.

105.   On the day I was accepted into the P.T.I. program, it was clear that I resided in New Haven, Connecticut. As evidence of this fact a condition of the P.T.I. program was that Plaintiff contact a P.T.I. counselor by telephone, which Plaintiff did.

106.   Several months went by and I received a call one morning from the P.T.I. office. A gentleman of Spanish decent informed me that I was scheduled to be in his office by 9:00 a.m. It was between 8:00 a.m. and 8:30 a.m. when I received the call. I asked him what number he dialed. He replied "(203) 624-2597." So I asked if he realized the number he dialed was a Connecticut number, hoping he would realize there was no way I could be in his office within a half hour.

107.   The P.T.I. agent responded that if I was not in his office by 9:00 a.m., he would terminate me from the program and he proceeded to hang up the phone on me.

108.   Months later, I was self-employed and busy operating my auto detail business. I never received notice of said termination, and the matter did not rear its ugly head until I was stopped later one night as I left my shop in Fairfield, Connecticut.

109.   I had not committed any traffic violation. I understood and appreciated the security of the stop. Upon my mention of several officers' names that were customers of mine, the officer was quite cordial, but ran my driver's license number, anyway. Upon returning from his vehicle, he said "Earl, I have bad news, you have a warrant for your arrest and I'll have to take you in to answer it." He also offered me the opportunity to pull my car back in front of the shop so it would not be towed.

110.   I spent the rest of the night in detention at the lock-up in Bridgeport, Connecticut. the next morning, I spoke with a female prosecutor and she informed me that she would be contacting the Court in Mays Landing, New Jersey to determine if they wanted me held for pick-up. Upon her return, she said she spoke with the Court in New Jersey and the warrant had been vacated, and I would be released. She asked if I needed to make a call, which I did. I called my ex wife to pick me up.

20

111. I left the Court, picked up my vehicle, went home, took a shower and drove to the Court in Mays Landing, New Jersey.

112. Upon arrival, I presented myself to the Court and explained to Judge Neustadter that I could not afford to be stopped in a customer's car as I was last night and that I was present to make sure the matter gets resolved.

113. He had his Clerk pull the records up onto the computer. He told me that I was lucky I was not stopped as I drove down, for it takes time for the warrant, which has been vacated, to clear the system. He had the Court Clerk type up a letter which he signed and told me to keep on my person for thirty days.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 66 of 119 PageID: 1764
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 22 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 22 of 70

## FIRST COUNT

### (§ 1983 Malicious Prosecution/Conspiracy to Maliciously Prosecute)

114. Defendant(s) Harrahs, through its agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson, and Surveillance Officer Anna Haag), individually and collectively did act under color of N.J.S.A. 5:12-121, and conspired with each other and other State actors from the Division of Gaming Enforcement (D.G.E.), State of New Jersey Casino Control Commission (C.C.C.), Atlantic City Municipal Prosecutors Office, and Judges of the Atlantic City Municipal Court, to prosecute plaintiff under color of N.J.C.C.J. 2C:20-3(a), knowingly, maliciously and in violation of plaintiffs Federal Constitutional right to equal protection of federal and state laws, Fourth Amend. Right to be free from search and seizure, right to acquire and possess property and equal privilege as provided by N.J.A.C.19:45-1.37C (b), granting plaintiff the right to play or redeem abandoned credits left on an abandoned slot machine.

115. Security Shift Manager, Alexander Lovas did initiate the unlawful criminal process by specifically stating "we have you on camera stealing that lady's money," (Pls.S.F. #17 at page 7 within). Which caused D.G.E. officer Kosko to be called and he (ofc. Kosko) would act in concert with and upon the initiation and information received from Harrah's agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson, and Surveillance Officer Anna Haag), to knowingly, and maliciously prosecute plaintiff without any probable cause in accordance to their customary plan. Interfering with and depriving plaintiff of his Fourth Amendment Constitutional right to be free from search and seizures and freedom of choice of location.

116. Defendant(s) Harrahs, through its agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson, and Surveillance Officer Anna Haag), and its co-conspirators knew that plaintiff's conduct did not constitute the offense defined by N.J.C.C.J. 2C:20-3(a). Evincing wanton malice on the part of defendants, so much so, Judge James Isman and or the Clerk of the Superior Court, Criminal Division, Mays Landing, New Jersey, was needed and called upon to aide in the cover-up.

117. Defendants and its co-conspirators knew that plaintiffs conduct was within the confines of N.J.A.C. 19:45-1.37C (b). Defendant(s) ignored this code evincing their malicious intent and willingness to deny plaintiff the privilege it grants. Defendant(s) and their cohorts knew that

22

N.J.S.A. § 5:12-121 (b), authorizes casino officials to detain patrons under certain circumstances and provides an accompanying qualified immunity from civil liability. However, the operation of this section can be triggered only by the existence of probable cause to believe that there has been a violation of N.J.S.A. § 5:12-112 through 5:12-116, which make it a crime of the fourth degree or a misdemeanor to use bogus chips, marked cards, loaded dice, sleight of hand tricks and a variety of other devices to cheat or swindle a casino. However, there is no basis upon which the claiming of abandoned slot credits can be viewed as cheating or swindling a casino. The act of playing or redeeming credits that are abandoned and left on a slot machine is a lawful act and or privilege provided by N.J.A.C. § 19:45-1.37C (b), further leaving no basis upon which said act of playing or redeeming abandoned credits left on a slot machine, can be viewed as cheating or swindling a casino and hence a violation of a criminal provision giving casino officials probable cause to detain a patron exercising said privilege as granted by N.J.A.C. 19:45-1.37C (b).

118. Defendant(s) and specifically Ofc. Kosko knew that as reported in the New Jersey Register (36 N.J.R.4431), Proposed Amendments N.J.A.C. 19:45-1.9B, 1.37, 1.38, 1.42, and 19:46-1.26. Summary (par.9): "one public comment was received on the second re-proposal from the New Jersey Division of Gaming Enforcement, which did not object to the adoption of the proposal." (see **Exhibit H**) Showing Officer Kosko's willingness to abuse his office of State Trooper and become the puppet of Harrahs to trample plaintiff's rights and be indifferent to statutory law approved by his agency.

119. Defendants and its co-conspirators knew that N.J.C.C.J. 2C:20-3(a) should not be construed or used to supersede and make criminal any act conforming to N.J.A.C.19:45-1.37C. Showing a malicious and knowing intent to be indifferent to plaintiff's equal protection provided by N.J.C.C.J. 2C:37-9, and evincing intent to inflict emotional distress from the pressure and fear of conviction on this false charge.

120. Within Harrahs Hotel and Casino there is not one notice warning patrons that the State of N.J. or Harrahs deems it a theft when a patron exercises his or her privilege granted by N.J.A.C.19:45-1.37C (b). To not have notice posted interferes with plaintiffs equal protection provided by N.J.C.C.J. 2C:1-2(a) (4).

23

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 68 of 119 PageID: 1706

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 24 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 24 of 70

121. As set forth in (PLs.S.F. #10-12), plaintiff held a lawful aleatory contract with Harrahs Hotel and Casino for the credits or funds due to be paid by said slot machine. Harrahs C.C.T.V. surveillance will show that plaintiff was the last patron to wager and press the cash out button for the funds at issue. (As set forth at PLs.S.F. #8-#12). When the master tape of the incident (which Harrahs is regulated to store on litigation hold pursuant to N.J.A.C. 19:45-1.8(c) (4) (vi) is viewed, from Ms. Fedaczynskys exit from the slot machine at issue. Her acts will evidence a complete abandonment of the slot machine. Defendant(s) Harrah's (specifically Surveillance Supervisor Anna Haag) and its co-conspirator (Mark Kosko) viewed Ms Fedaczynskys act of abandonment and deleted it to produce the tampered and misleading evidence. (Pls.S.F. #42-43). Through ofc. Kosko's and surveillance officer Anna's conspiracy the tape was produced for presentation at plaintiff's Municipal Court trial. Subsequent to the filing of this action Harrah's and or its agent Christopher Mauro hired Legal Document Solutions to overlay tracking marks over the faces of its employees to conceal their identities. Said act was complied with for as they (Legal Document Solutions) will do anything to satisfy a customer.
    **(See Exhibit O and Exhibit Z)**

122. Summons #S-2006-005766-0102 was issued on May 15, 2006, (see **Exhibit** A) and served upon plaintiff by State Trooper Mark Kosko as set forth at (Pls.S.F.#48-49), based upon the call, information he received from Harrahs agents on that date, and this band of cohorts mutual desire to effect the customary plan to unlawfully eject plaintiff, and officer Kosko's malicious intent to show plaintiff the hard way.

123. Defendant(s) Harrahs and its agents (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson, and Surveillance Officer Anna Haag), along with co-conspirator officer Kosko, all knew that by design the malicious prosecution would continue until plaintiff either took a plea offer of trespassing or went to trial, at which officer Kosko would be the sole witness called upon by the state. He would state it was his investigation, verify the videotape he and Anna Haag conspired to manufacture, state the events of the day, knowing he was not on the premises, violate my sixth amendment rights and upon the judge announcing my guilt, I would be issued an order such as the one evidenced by **(Exhibit N)** purporting to lawfully evict me from all Harrah's owned Atlantic City casino properties, as was told to Markland Grant within said exhibit.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 69 of 119 PageID: 1767

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 25 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 25 of 70

124. On July 26, 2007, at the Atlantic City Municipal Court, Judge Weeks presiding, after doing all
to fulfill the objectives of the machination and outrageous conduct set forth at (Pls.S.F. #50-
85), did dismiss the complaint. (See **Exhibit A** under Court Action).This dismissal was not
challenged by way of appeal evincing a total abandonment and termination in favor of this
plaintiff, who was defendant pro-se to said complaint.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 70 of 119 PageID: 1768

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 26 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 26 of 70

## SECOND COUNT

### (§ 1983 False Arrest/False Imprisonment and Conspiracy to Commit Same)

125. Plaintiff repeats the allegations of the First Count as if set forth at length herein.

126. Plaintiff was restrained as part of a customary plan and held in custody by Security Shift Manager Alexander Lovas and Security Officer Vance Thompson. Unreasonably and without probable cause as set forth at (Pls.S.F. #17-28), violating his liberty and right to be free from unreasonable search and seizure, and unreasonable detainment as held by Restatement (Second) of Torts § 35.

127. Plaintiff even asked if he was under arrest. To no reply, but continued restriction on his liberty and choice of location.

128. When Security Officer Vance Thompson stated "you're not going anywhere till you give up the ticket" (Pls.S.F. #26) plaintiff knew he was now imprisoned.

129. N.J.A.C. 19:45-1.11(b) (6) (viii), (See **Exhibit F**), requires the recordation of any and all unusual occurrences in a casino where a security officer is assigned. N.J.A.C. 19:45-1.10(b) (1) (ix) requires a camera to record all entrances to a casino. The master recordings from the camera covering the entrance where plaintiff was confined will verify all of plaintiff's body gestures, as put forth at (Pls.S.F. #8-11, #12, #15-23, #26, #28, and #29-32). Said recording will also chronologically verify the truth of plaintiff's statement of facts. This recording will also verify the date, time, and show the unreasonable length to which plaintiff was detained without any investigation on the part of Harrahs, evincing a malicious intent to arrest and imprison. See (**Exhibit F**)

130. Defendants (Security Shift Manager, Alexander Lovas and Security Officer Vance Thompson), continued detainment and the giving of custody of plaintiff to officer Kosko, was wrongful. With all the information at that time indicating to those cohorts that plaintiff had claimed abandoned credits, and they should settle who has superior title based on their C.C.T.V. recordings. If title was still claimed by both parties the funds and C.C.T.V. recordings should have been given to the C.C.C. or the Superior Court for adjudication.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 71 of 119 PageID: 1769
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 27 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 27 of 70

131. Defendants (Security Shift Manager, Alexander Lovas and Security Officer Vance Thompson), knew that N.J.A.C.19:45-1.11(c) (7) (vi) does not extend to permit security officers to detain for any illegal activity. Rather only those activities set forth in the statutes. This is established in Barletta v. Golden Nugget Hotel Casino, 580 F.Supp. 614,620, (D.N.J. 1984) at pt. [7], which defendant's agents did violate. (See **Exhibit I**) Hence the arrest and imprisonment of plaintiff was without justification, and further evinces malice on defendant(s) (Harrah's Hotel and Casino, and its agents Security Shift Manager Alexander Lovas and Security Officer Vance Thompson), part. (see **Exhibit I**)

132. Defendants will feign the loss and or destruction of all master recordings or set forth they were destroyed at the approval of the C.C.C. or D.G. E., violating C.C.C Regulations placing not only a litigation hold on the evidence but restricting its Destruction for 3 years. This fact is established for within defendants initial disclosures said tapes are numbered G340 and G52. (See **Exhibit P and Exhibit V**) Yet contrary to defense counsel Christopher Mauro's statement on the record that plaintiff should receive a CD on 12/17/08 or 12/18/08 said CD was not placed in the mail until 12/17/08, (see postmark on **Exhibit O**), and upon receipt plaintiff discovered defendants presentation from, Legal Document Solutions, 710 S. 89 St., Las Vegas, NV, 89101, (See **Exhibit O**), which clearly violates N.J.A.C. 19:45-1.10(a)3 and 19:45-1.10(b)2(i) through 19:45-1.10(b)2(iii), as each casino is required to have the capacity to produce VHS and or CD's of recorded surveillance recordings on its premises not at a location outside the jurisdiction of the courts of the State of New Jersey.

133. Defendants (Security Shift Manager, Alexander Lovas and Security Officer Vance Thompson), knew they did not have probable cause to act under color of N.J.A.C.19:45-1.11(b) (6) and N.J.S.A.5:12-121, for plaintiff had not violated any section of N.J.S.A.5:12-113-116.

134. As set forth in (PLs.S.F. #38-49) Officer Kosko did continue plaintiff's false arrest. Officer Kosko did violate plaintiffs U.S. Const. Fourth Amendment Rights when he knowingly took three days to draft his Investigation Report, which clearly shows that he claimed to have arrested plaintiff on false or fabricated information as to the existence of a warrant for plaintiffs arrest for Bail Jumping, not violation of probation as he stated to plaintiff on May 15, 2006.

135. Officer Kosko did not serve plaintiff with a warrant for violation of probation during the eleven days I was incarcerated at the Atlantic County Justice Facility, violating plaintiffs equal protection of NJ Rule of Court 3:3-3 ( c ). Officer Kosko further violated plaintiffs Const.

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 72 of 119 PageID: 1770

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 28 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 28 of 70

Right to be brought before a Court within forty eight hours after arrest, and he further neglected his duty to release plaintiff when he knew on May 19, 2006 that he did not have nor did any warrant exist for plaintiffs arrest, whereby he and Harrah's Hotel and Casino became liable for plaintiff's false imprisonment for the eleven days plaintiff was held at the Atlantic County Justice Facility (Commitment # 01 141644). (See **Exhibit L-32)**

136. At no time during my incarceration at the Atlantic County Jail did I leave said facility to appear in Court to answer the charge of violation of probation nor did I relinquish my pro-se status or speak to any public defender or private attorney in reference to a charge of violation of probation and or bail jumping. The entry and acceptance of a plea on my behalf by the cohorts violated my equal protection rights provided by N.J.R. 3:9-2. The late presentation of Officer Kosko's Investigation Report reveals a blatant attempt to conceal my false arrest for (Exhibit L-32) shows a charge being entered on the public records of the State of New Jersey of 2C:45-3, and the Deputy Attorney General's Office for the State of New Jersey,(Kathleen Bartus), hired a private detective to secure said investigation report of Officer Kosko which states a charge of 2C:29-7, bail jumping, placing the two documents contrary to one another.

137. The Superior Court of Atlantic County did not sentence plaintiff in any matter to a sentence of probation as indicated in (Exhibits K-3 and L-3).

138. Judge James Isman did enter or ordered the false entries into the New Jersey Judiciaries Promis/Gavel Public Access records to conceal the false arrest by Officer M. Kosko on May 15, 2006.

139. The Clerk of the Atlantic County Superior Court is liable for all false entries to the New jersey judiciaries Promis/gavel Public Access records for he or she did follow either judge Is man's or Judge Garofolo's instructions as to what entries to make, or he or she did grant one or both of the judges access to make said entries into the Public Access records.

140. Attorney George Morton did not consult with plaintiff to allow entry of a plea of guilty to the charge of violation of probation as set forth in (Exhibits, L-1, L-7, L-8, K-7,). The fact is further evidenced by the judicial admission on the record of proceedings within the U.S. District Court on Dec. 17, 2008, wherein George Morton did state to Magistrate Judge Joel Schneider that he had not been in plaintiff's presence since May 16, 2003.

28

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/20/10   Page 73 of 119 PageID: 1771
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 29 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 29 of 70

141. Judge Isman and defendant George Morton know that they cannot produce a valid Condition of Probation signed by plaintiff. For on March 19, 2003, I only sign his order dismissing the charges against me within the agreement, which are contrary to the New Jersey Promis/Gavel public records.

142. The record of proceedings of March 19, 2003, will show that I did appear in a Pro-Se capacity. The record will also show that the only judicial officer to cease and desist in their corrupt ways was Prosecutor, Chester Weich. For he stated in specific terms upon being given the order for his signature "Judge in light of all that's taken place in this case I refuse to sign that order" and he did not sign it where the blank space is on said document.

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 74 of 119 PageID: 1772

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 30 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 30 of 70

## THIRD COUNT

### (§ 1983 Conspiracy to Maliciously Use/Abuse Process)

143. Plaintiff repeats the allegations of the Second Count as if set forth at length herein.

144. Without questioning plaintiff and exhibiting indifference to N.J.A.C.19:45-1.37C, Security Shift Manager, Alexander Lovas did accuse plaintiff of "stealing that lady's money." (Pls.S.F.#17) At that point plaintiff understood he was being charged with being a thief. This false statement was further repeated by Security Shift Manager, Alexander Lovas to his back-up officer, (Security Officer Vance Thompson). Then this false allegation was further passed on to D.G.E. agent (Mark Kosko), with him acting on this information by continuing custody and imprisonment of plaintiff against his will, in accordance to the cohorts customary plan. (Pls.S.F.#29-48) The false arrest and imprisonment were to be covered up and justified through the conspiracy set forth at (PLs.S.F. #86). The first step of the process being issued by officer Kosko, in furtherance of the customary plan.(Pls.S.F.#50)

145. N.J.C.C.J. 2C:20-3(a) was promulgated to notify and warn against conduct that is intended to injure others in their movable property. This charge was used by the conspirators for lack of an offense under N.J.C.C.J. Chapter 37-Gambling offenses, and to intimidate plaintiff to seek a plea and be unlawfully evicted upon sentencing. This fact is established by Judge Bruce Weeks statement within **(Exhibit AA)**

146. Having no offense to charge plaintiff with under Chapter 37 above, defendant(s) and its cohort molded physical evidence to present the appearance of a theft, knowing that the issuance of process was outside the scope the New Jersey State Legislature intended. Thereby perverting the use of process and using one statute to invalidate conduct permitted by another. N.J.C.C.J.2C:20-3(a) used to supersede and invalidate privileges granted by N.J.A.C.19:45-1.37C.

147. Harrahs and its agents (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag) sought to evict plaintiff without cause after unlawfully arresting and imprisoning him. Process was initiated and perverted by defendant(s)

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 75 of 119 PageID: 1773
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 31 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 31 of 70

calling an agency that it knew would aide Harrahs in preserving its immunity from criminal and civil liability.

148. The defendant(s) ulterior and perverted motives also included the institution of the machination set forth at (PLs.S.F. #86), with the conspiracy's success being assured by Harrahs through its ratification of the release of tampered evidence to officer Kosko and knowledge that its agents would not be called by the state to give testimony in open court.

149. It was hoped that the video would help intimidate plaintiff when a Public Defender would sell it as a strong point in the States case, and plaintiff should plead guilty and pay the fine.

150. Process should not be used to intimidate and force one to be criminalized outside the truth as attempted by defendants. As a proximate result of defendant(s) Harrahs and its agents use and abuse of process plaintiff has been damaged as set forth within the Ad Damnum clause.

31

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 76 of 119 PageID: 1774
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 32 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 32 of 70

## FOURTH COUNT

### (§ 1981 Racially Motivated Conspiracy to Deprive Constitutional Rights)

151. Plaintiff repeats the allegations of the Third Count as if set fourth at length herein.

152. Defendant(s) Harrahs, its agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), while acting in concert with each other and various state and public officers, under color, and indifferent to the laws of the State of New Jersey, which Harrahs is an establishment of public accommodations and amusement, did discriminate against and deny plaintiff the benefits of its public accommodations and amusement by stating he was evicted and depriving plaintiff the benefits of his valid and legal aleatory contract due from his wagers on the slot machine on May 15, 2006, because plaintiff is an African-American. (Pls.S.F.#8-12) and (PLs.S.F. #33)

153. Contrary to 42 U.S.C.A. 1981, defendant(s) did deny plaintiff equal treatment and access to the privileges granted by N.J.A.C. 19:45-1.37C (b). Defendant(s) and its co-conspirators deprived plaintiff of the enjoyment and benefit of his valid and lawful aleatory contract as an invited guest of Harrahs Hotel and casino. Plaintiff met all the requirements and performances required by him to gain superior title to credits redeemable from the abandoned slot machine. Plaintiff inserted his own voucher and did wager three to four spins at said slot machine. (Pls.S.F.#10-12)

154. Without offering any evidence to the contrary of plaintiffs valid aleatory contract or through investigation by Harrahs to show that there may have been a previous owner, and it was in fact one in the same as the woman who approached plaintiff, Harrahs discriminated against plaintiff because he was African-American and awarded the redeemable credits to Ms. Fedaczynsky a white female. (Pls.S.F.#40-41)

32

155. Ms. Fedaczynsky was similarly situated as plaintiff. We both were claiming to have wagered on the same slot machine. Plaintiff walked away with what turned out to be a blank voucher and was not paid. (Pls.S.F.#15) Ms. Fedaczynsky was claiming she either forgot or misplaced the credits due to her. However plaintiff only received bias ear to his account of the events from officer Kosko, who would ultimately secure copy of the C.C.T.V. recording that was manipulated to only show plaintiff leaving the slot machine. (Pls.S.F.#43) Destroying the existence and evidence of plaintiff's aleatory contract and the truth that plaintiff was afforded the conclusion that the machine was abandoned upon his approach. (Pls.S.F.#29-43)

156. The above act stated at averment #155 is established within defendants own disclosure in the form of the CD manipulated for them in Las Vegas by Legal Document Solutions. They have clearly manipulated video tapes G340 and G52 to destroy the recording transmitted by camera 0214 between 15:51:00 pm through 15:56: pm which document (Pls.S.F. #8 #13). The correspondence giving instruction to or the receipt of the payment for services rendered will prove upon whom liability rests for this attempted hoax upon plaintiff and the Court.

157. Harrahs, its agents and co-conspirators knew that if plaintiff could be viewed leaving the slot machine, Ms. Fedaczynsky could be viewed doing the same. They knew and saw from the C.C.T.V. recording that her actions evinced a complete abandonment of the slot machine at issue, giving plaintiff superior title.

158. Harrahs preferred Ms Fedaczynsky as a patron because she is white and awarded her the funds instead of following the procedure of N.J.C.C.J.2C:65-1.Procedure to be followed by law enforcement agencies when stolen property is taken into custody, whereby the C.C.C. or Superior Court could adjudicate the disputed claim of superior title to the funds.

159. As a proximate cause of Harrahs, its agents and coconspirators conduct plaintiff was denied the benefits of his valid aleatory contract, denied equal benefits of public accommodations and amusement to its hotel and casino because plaintiff is an African-American and Harrahs prefers the patronage of whites and Asians. Plaintiff has suffered damages as set forth within the ad Damnum clause.

33

Case 1:08-cv-02407-NLH-KMW  Document 58-1  Filed 04/28/10  Page 78 of 119 PageID: 1776
Case 1:08-cv-02407-NLH-KMW  Document 36  Filed 12/14/09  Page 34 of 70
Case 1:08-cv-02407-NLH-KMW  Document 32-3  Filed 08/18/2009  Page 34 of 70

## FIFTH COUNT

### (State Constitutional Rights Violations/Conspiracy to Commit the Same)

160.  Plaintiff repeats the allegations of the Fourth Count as if set forth at length herein.

161.  On May 15, 2006 at Harrahs Hotel and Casino, defendant(s), Harrahs and its agents (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), did acquire the assistance of known state and public officers that would comply with the customary plan by which defendant(s) could evict plaintiff without cause and protect Harrahs and its agents from criminal and civil liability once Harrahs and its agents unlawfully arrested/imprisoned plaintiff in violation of plaintiff's N.J. State Constitutional Right to be free from unreasonable search and seizures.

162.  As set forth in (Pls.S.F. #20, #25-27, and #30), defendant(s) and its cohorts did deprive plaintiff of his right to acquire, posses and protect property, and defend his liberty.

163.  As set forth in (PLs.S.F. #10-12 and #19), defendant(s) and its co-conspirators did interfere with and deny plaintiff of his right to acquire and posses property through plaintiff's aleatory contract with Harrahs Hotel and Casino.

164.  Plaintiff was denied his right to due process of the laws by defendant(s) and its cohorts act as set forth at (PLs.S.F. #17, #19, #40, and #62-68).

165.  Defendant(s) and its co-conspirators by doing the acts and omissions set forth at (PLs.S.F. #16-29, #52, #71-76, and #84) did interfere with and deny plaintiff equal protection of the laws as granted by the State of New Jersey Constitution.

166.  Plaintiff's N.J. Const. Right to be secure against unreasonable searches and seizures was interfered with and denied by defendants as set forth at (PLs.S.F. #17-29, #32, #36, and #38).

167.  When defendant(s) and its co-conspirators acted as set forth in (PLs.S.F. #22-25, and #40-43) they did interfere with and deprive plaintiff of his right in a criminal proceeding to a speedy and public trial by an impartial jury, to be informed of the nature and cause of the accusation, to confront witnesses, and to have compulsory process to obtain witnesses. Causing plaintiff to suffer damages as set forth within the Ad Damnum Clause.

Case 1:08-cv-02407-NLH-KMW  Document 58-1  Filed 04/28/10  Page 79 of 119 PageID: 1777
Case 1:08-cv-02407-NLH-KMW  Document 36  Filed 12/14/09  Page 35 of 70
Case 1:08-cv-02407-NLH-KMW  Document 32-3  Filed 08/18/2009  Page 35 of 70

## SIXTH COUNT

### (Conspiracy to Violate State of New Jersey Const. and Take Exclusive Privilege)

168. Plaintiff repeats the allegations of the Fifth Count as if set forth at length herein.

169. Defendant(s), Harrahs, its agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), Officer Kosko and the cohorts did violate and deny plaintiffs N.J. State Constitutional guarantee, by taking and exercising an exclusive privilege to claim and control title rights to abandoned credits left on an abandoned slot machine, violating N.J. Const. Article 4, Section 7, Paragraph 9(8), and depriving plaintiff of the benefits of his valid aleatory contract, under the color of N.J.S.A. 5:12-121 , and enlisting the aid of state and public officers to criminalize plaintiff through threats, and acts of intimidation in hopes he would plead to a charge of trespassing by way of the cohorts customary plan, whereby Harrahs could then utilize N.J.S.A.46:30C-4( b ) (1) to confiscate any credits that plaintiff claimed upon entering any Harrahs property after being found guilty or pleading to trespassing in the Atlantic City Municipal Court.

170. As set forth at (Pl.s.S.F. #29-85) defendant(s) and its agents did conspire with the Division of Gaming Enforcement, the Office of the Municipal Prosecutors, and The Municipal Court of Atlantic City, to utilize the laws of the State of New Jersey, drafted by the N.J. Casino Control Commission, to void and be indifferent to plaintiffs aleatory contract to the credits he lawfully gained title to on May 15, 2006.

171. Harrahs utilizes specific and intentional omission in the laws proposed and enacted by the N.J. Legislature, as proposed by the C.C.C. which are design to allow a casino to take advantage of the privilege granted to patrons and casinos under N.J.A.C.19:45-1.37C (b).

172. When defendant(s) use the laws proposed by the C.C.C. and enacted by the N.J. Legislature, to criminalize patrons it discriminately deems undesirable, with the discrimination directed predominately at African-Americans, in perpetuation of the myth that African-Americans are prone to crime and violence. This myth is used to intimidate those falsely accused into pleading and becoming trespassers for fear of imminent conviction on theft charges.

173. Harrahs and its cohorts merely utilized and made part of their customary plan the very scheme set forth by I. Nelson Rose, in his book, Gambling and the Law, which was published in 1981, predicting the means whereby a casino will evict patrons? See (Exhibit J)

174. Defendants also knew that if plaintiff pleaded guilty to trespass they could utilize N.J.S.A. 5:12-71.1 to legally and permanently evict plaintiff upon three convictions.

175. Harrahs takes further unconstitutional advantage over plaintiff when it initiated the irregular and malicious process against plaintiff knowing that its agents will not be called to testify in open court. Harrahs knew that by design the municipal prosecutor would accept inadmissible testimony from D.G.E. agents, who are called to its casino, and not present to have first hand testimony to an incident. Defendant(s) hoped this would be the result obtained against plaintiff and the judge, (judge Weeks) who has adopted the belief contrary to the law that when a patron claims abandoned credits on a slot machine, it is against the law, (See **Exhibit** M), and would sentence plaintiff to (x) number of months or years eviction from all Harrahs properties.

176. As a proximate and direct result plaintiff was robbed of $140.25 on May 15, 2006, and deprived usage of said funds. In addition to the theft by defendants, plaintiff has suffered damages as set forth within the Ad Damnum Clause. Plaintiff request injunctive relief in the form of F.B.I. investigation into all funds claimed by Harrahs under N.J.A.C. 19:45-1.37C, and require specific legislation to require Harrahs and all casino's to mail funds to the last patron its data files can identify, that are canceled by its slot attendants.

36

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 81 of 119 PageID: 1779

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 37 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 37 of 70

## SEVENTH COUNT

### (§ 1983 Conspiracy to Commit Fraud/Misrepresentation of Fact)

177. Plaintiff repeats the allegations of the Sixth Count as if set forth at length herein.

178. As part of their customary plan to conceal a wrongful arrest, Judge James E. Isman did conspire with judges Albert J. Garofolo and Robert Neustadter to conceal and/or present as lawful Plaintiff's arrest on a Warrant for Violation of Probation on May 15, 2006, by Trooper M. Kosko, badge #4540.

179. This act would be accomplished by Judge Isman not presiding over the Violation of Probation Hearings on May 25, 2006 as evidenced within (Exhibits K30 and L 32).

180. Judge Isman knew that he should have presided over said Probation Hearings for as evidenced by the "I" in the respective indictment numbers of, 940801839-I and 01-10-02107-I, these cases were assigned to Judge Isman as indicated. Yet knowing that on or about March 19, 2003, he, (Judge Isman) issued an Order stating Plaintiff was not sentenced to probation. He did redirect or allowed the assignment of presiding over the false probation hearings to Judge Robert Neustadter, as to allow him to claim ignorance of the No Probation Order of March 19, 2003.

181. Judge Isman did act the same when Judge Albert Garofolo held the so called Enforcement hearing on November 12, 2003. Again with Judge Garofolo being able to claim Ignorance to the No Probation Order of March 19, 2003.

182. Judges Garofolo and Neustadter must admit or deny their presiding over the proceedings of November 20, 2003 and May 25, 2006 or claim ignorance to the fact and admit that their names were entered at (Exhibits L 6 and K-5 without their knowledge by Judge Isman and/or the Clerk of the Superior Court Atlantic County, Criminal Law.

183. Judge Isman also knows it to be a fact that Plaintiff was not issued nor did I sign a Terms and Condition of Probation as required by N.J. Statue 2C:45-1(f) and set forth at (Pls. S.F. #99).

184. Judge Isman also knows it to be a fact that he violated N.J. Statue 2C:44-6 (a), for on March 19, 2003 and May 16, 2003, he was not in possession of a Pre-Sentence report as evidenced by the entry at (**Exhibit L-1**), **PSI REPORT ORDER: 00-00-0000, PSI REPORT COMPL: (00-00-0000, (Exhibit K-1), PSI REPORT ORDER: 00-00-0000, and PSI REPORT COMPL: 00-00-0000**

185. The Clerk of the Superior Court at the Criminal Courthouse in Mays Landing, New Jersey knew or should have known by his/ her entries that to make entries at **PSI REPORT ORDER and PSI COMPL**; as evidenced in (Exhibits K-1 and L-1) violated N.J. Statue 2C:44-6(a); or he/she must admit that they allowed another to make such entries.

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 82 of 119 PageID: 1780

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 38 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 38 of 70

186. As averred at (Pls. S. F. #93) defendant George Morton knew that Plaintiff was not the target of the charges of case #0001897.

187. Upon defendant George Morton being assigned as my stand by counsel, he took the assignment of reporting back to the cohorts my intentions for on or about March 17, 2003, he did inquire as to what I would do upon my release. To which I replied "Return to Connecticut to raise my son."

188. As evidence to the conspirators attempt to set me up on May 15, 2003, the record of proceedings will reflect that Judge Isman did say "Mr. Hickson, I commend you for no-one felt you would appear today."

189. As set forth at (Pls. S.F. #94-97), George Morton, The Clerk of the Superior Court, Atlantic County Criminal Division, knew that Plaintiff had not been served with a summons, complaint, nor warrant in reference to case #0001897. This fact is evidenced by the lack of said document with Plaintiff's name as set forth at (Pls. S.F. #94) citing the entries of (Exhibit K29).

190. With George Morton present as my stand by counsel on March 19, 2003, He, (George Morton), Judge James Isman, Tama Hughes, all were present to not hear it set on record the mention of a document purporting to be a Terms and Conditions of Probation. Nor was such a document reference on May 17, 2003. As set forth at (Pls. S.F. #99-100).

191. As set forth at (Pls. S.F. #101-113) Judge Neustadter cannot deny the fact as the record of proceeding will reflect that I did appear before him after being held by the Court of Bridgeport, Connecticut, and he did state that case #94003097 had been dismissed against Plaintiff and he did issue and sign a letter reflecting that fact for me to keep on my person as proof of the fact.

192. Judge Robert Neustadter knew it to be a fraud to purport to complete an Enforcement Hearing on May 25, 2006, as set forth at (Exhibit L-5). He must admit to fraud or claim ignorance as to his name being entered as presiding in said proceeding.

193. George Morton knows that Plaintiff did appear Pro-Se on all occasions in all matters before Judge Isman. For it to be stated as in (Exhibit K-7) that he was the attorney of record at a Judgment/Conviction is a fraud and strips Plaintiff of his right to self representation. No signed waiver of Pro-Se status or statements on any record can be produced to condone George Morton's standing in my stead at any proceedings. He must admit to fraud or claim ignorance as to his name being entered as representing a Plaintiff that has not waived his Pro-Se status.

194. The Clerk of the Superior Court, Atlantic County Criminal Division must admit to complicity to fraud for the numerous false entries of (Exhibits K and L) or claim that he or she is ignorant to the entry within said documents and show proof as to the person responsible for said entries.

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 83 of 119 PageID: 1781
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 39 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 39 of 70

195. Once determined as to the individual responsible for the false entries set forth in (Exhibits K, and L) no Judicial Officer should have the hubris to claim immunity, absolute nor qualified for the entry of Judgments after proceedings is a clear administrative act and requires no judicial discretion by a Clerk of the Court or a Judge, himself.

196. Knowing that plaintiff was not sentenced to probation the band of cohorts did alter public records to harm plaintiff and attempted to cover up plaintiffs false arrest and imprisonment from May 15,2006 to May 26, 2006, causing plaintiff great emotional distress from being incarcerated and other damages set forth within the Ad Damnum Clause.

Case 1:08-cv-02407-NLH-KMW  Document 58-1  Filed 04/28/10  Page 84 of 119 PageID: 1782

Case 1:08-cv-02407-NLH-KMW  Document 36  Filed 12/14/09  Page 40 of 70
Case 1:08-cv-02407-NLH-KMW  Document 32-3  Filed 08/18/2009  Page 40 of 70

## AD DAMNUM CLAUSE

197. As a direct and proximate cause of defendant(s), Harrahs, its agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), false statements, unlawful arrest and imprisonment of plaintiff. indifferences taken to New Jersey Statutes, Administrative Codes and to plaintiffs Federal and State Constitutional Rights, plaintiff has suffered damages from the unlawful arrest/imprisonment and pendency of the malicious and irregular criminal process.

198. The false accusations of defendant(s) (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), as ratified by Harrahs imputed criminal conduct to plaintiff, causing an irregular and malicious prosecution to be initiated and continued against plaintiff, causing plaintiff to incur and suffer great expense to defend, emotional distress, and erosion of my confidence in the judicial system of Atlantic County.

199. Plaintiff incurred special grievance by way of being compelled to sustain an intense study of the laws of the state of New Jersey in order to overcome the covert conspiracy utilized by Harrahs, its agents, D.G.E., The Municipal Prosecutors Office, of Atlantic City, The N.J. Casino Control Commission, and the Atlantic City, Municipal Court, and the Superior Court in Mays Landing, New Jersey.

200. The above special grievance caused plaintiff great stress, strain to and accelerated deterioration of plaintiffs eyesight, financial hardship and injury to plaintiff's good name, reputation, character, and present false charges of being a fugitive from justice. With an open charge of theft, plaintiff could not and cannot seek gainful employment, nor apply his specific trades within the auto appearance and housing make ready industries.

201. Plaintiffs sleep pattern has been greatly altered from continuous nightmares of what would have happened upon attack by Harrahs two "U.F.C. built" security officers. Plaintiff awakes at night wet with sweat from defending himself in his nightmares, swinging wildly at times upon awakening. Plaintiff has also developed a habit of cigarette smoking to calm and sooth his nerves.

202. Plaintiff can no longer relax and enjoy the casino gaming experience at any Atlantic City Casino and has been deprived of and interfered with in his Federal and State Constitutional Rights. The Right to:

A) enjoy and defend life and liberty

B) acquire posses and protect property

C) pursue and obtain safety and happiness

D) due process of law

E) equal protection of the laws

40

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 85 of 119 PageID: 1783
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 41 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 41 of 70

F)  not to be denied or discriminated against in any civil right

G)  be secure against unreasonable searches and seizures

H) in a criminal proceeding to a speedy and public trial by an impartial jury, to be informed of the nature and cause of the accusation, to confront witnesses, to have compulsory process to obtain witnesses.

I)  to freely assemble, consult for the common good, express opinions, to representatives, and petition for redress.

J) the right to any other natural and unalienable right retained by the people.

K) the legislature shall not pass any private, special or local laws granting to

any corporation, association, or individual any exclusive privilege, immunity or franchise whatever.

**Wherefore:** Plaintiff requests judgment against defendant(s) Marina Associates a/k/a Harrahs Hotel and Casino it's agents, (Security Shift Manager, Alexander Lovas, Security Officer Vance Thompson and Surveillance Officer Anna Haag), in their individual and collective capacities and defendants #5, #6 and #7 for their contribution to plaintiff's harm for:

1)  Compensatory damages

2)  Punitive damages

3)  Cost and expense of suite

4) Injunctive relief of Court ordered F.B.I., American Bar Association, and Attorney

Ethics Committee, New Jersey State Trooper Internal Affairs, Attorney General,

District Ethics Committee (DEC), The Disciplinary Review Board (DRB), and

other agency investigations into the misconduct of all co-conspirators named herein.

And such other and further relief as the Court may deem proper.

41

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 86 of 119 PageID: 1784
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 42 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 42 of 70

**JURY DEMAND**

          Plaintiff demands a trial by jury as to all issues so triable.

Dated: 8/17/09

*Earl D. Hickson*

                Earl D. Hickson, Plaintiff, Pro-Se

**CERTIFICATION**

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding. I further certify that all statements are based on fact and based on prevailing law and all copies of exhibits are accurate and true copies of said documents. I verify this complaint and certify that it is based upon the first hand knowledge of Earl D. Hickson and at the risk of sanctions and or perjury I pray that the defendants are judged based upon their ability to show my averments to not be based in fact or law. I further pray that the trier of the facts see through all attempts as misrepresentation of facts and avoidance of the law and grant a just adjudication of this matter to set forth new law to be followed within the State of New Jersey and guide other jurisdiction to eliminate the Constitutional violations stated here within.

*Certification of Service within Notice of Motion to Amend Complaint dated 8/17/09. (See Proof of Service)*

Dated: 8/17/09

*Earl D. Hickson*

                Earl D. Hickson, Plaintiff, Pro-Se

42

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 43 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 43 of 70



Case 1:08-cv-02407-NLH-KMW    Document 58-1    Filed 04/28/10    Page 88 of 119 PageID: 1786
Case 1:08-cv-02407-NLH-KMW    Document 36    Filed 12/14/09    Page 44 of 70
Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009    Page 44 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 89 of 119 PageID: 1787
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 45 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 45 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 90 of 119 PageID: 1788
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 46 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 46 of 70



4

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 91 of 119 PageID: 1789
Case 1:09-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 47 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 47 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 92 of 119 PageID: 1790
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 48 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 48 of 70



(b) Any residual slot credit not played or redeemed by a patron shall be deemed abandoned; provided, however, that any such credit shall remain on the slot machine until:

1. Played or redeemed by a patron; or
2. Cancelled by the casino licensee in a manner approved by the Commission.

In response to Mr. Hickson's action claim, it must be noted that he has failed to redeem completed the forms pursuant to the statute of the evidence has not been proven beyond doubt. Of course if the State at trial is unable to produce sufficient evidence then the defendant will be found not guilty. At this stage, no such inference is warranted because the trial has not commenced. Similarly, a charge of theft of a voucher belonging to another must be proven beyond a reasonable doubt.

Mr. Hickson is certainly entitled to argue by way of defense that the machine he played was unattended. Therefore no such that he is entitled to a dismissal at this stage.

Thank you again for your consideration and courtesy and should you have any questions please do not hesitate to contact me.

Respectfully,

Samuel Lashman, Esq.

cc:   Earl Hickson, Pro Se

Exh. E P 2

6

Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 49 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 94 of 119 PageID: 1792
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 50 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 50 of 70



Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 51 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 51 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 96 of 119 PageID: 1794
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 52 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 52 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 97 of 119 PageID: 1795

Case 1:08-cv-02407-NLH-KMW   Document 36    Filed 12/14/09   Page 53 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 53 of 70

## Barletta v. Golden Nugget Hotel Casino, 580 F.Supp. 614, at 619-620, (D.N.J. 1984)

N.J.S.A. §§ 5:12-121(b), (c) (West 1983).

This statute is explicit and its intent is clear. By enacting this provision, the Legislature is expanding the powers of the Casino personnel. However, this power is expanded only to include cheating and swindling, and the Casino personnel are only insulated from liability after the Casino patrons have been put on notice of this expanded power statutorily granted.

Defendant, Golden Nugget, maintains that N.J.A.C. tit. 19, § 45-1.11(c)(7)(vi) is much broader than this statutory provision and allows the Casino security force to detain an individual, without civil liability, for any illegal act provided there is probable cause.

[HN5] A valid and duly promulgated regulation of a public administrative body generally has the force and effect of law; it is also considered as an integral part of the statute under which it was made just as though it were expressly prescribed in the statute. Consequently, the Code provision must be considered [**10] together with the enabling statute and in the light of provisions contained in that statute. 73 C.J.S. *Public Administrative Bodies and Procedure* § 108 (1979).

[*619] Construing the Code provision to provide such broad arrest powers to the security force exceeds not only the scope of the statute, but also the common law with regard to arrest.

[HN6] At common law, a citizen could make an arrest without a warrant only where a felony was provable and there were reasonable grounds to believe the arrested person had committed the felony, *State v. McCarthy*, 123 N.J. Super. 513, 517, 303 A.2d 626 (Law Div. 1973); *Reuck v. McGregor*, 32 N.J.L. 70 (Sup. Ct. 1866). Arrests without a warrant for misdemeanors were permitted only when the misdemeanor was committed in the presence of the arresting person. *Moll v. United States*, 413 F.2d 1233, 1236 (5th Cir. 1969). However, it was "essential that such offense shall actually have been committed or attempted." 6A C.J.S. *Arrest* § 15 at 25 (1975). Hence, "where it appeared after arrest that a person had in fact not committed any offense, the arrest was held unlawful." *Id. See also* W. Prosser, Law of Torts, § 17 at 100 (1971).

[**11] Additionally, the Code provision does not provide immunity from civil and criminal liability.

Hence, it seems unlikely that the Commission intended to expand the arrest powers beyond both the statute and the common law without explicitly making its intent clear.

A more likely reading of the Code provision, and the one in keeping with the statute, would be that rather than broadly expanding the statute, the Code is providing a structure and framework in which the statute operates.

[HN7] N.J.S.A. § 5:12-70(j) provides:

15

The Commission shall, without limitation on the powers conferred in the preceding section, include within its regulations the following specific provisions in accordance with the provisions of this act:

j. *Prescribing the procedures, forms and methods of management controls,* including employee and supervisory tables of organization and responsibility, and minimum security standards, including security personnel structure, alarm and other electrical or visual security measures. (emphasis added).

N.J.A.C. tit. 19, § 45-1.11(c)(7) prescribed the structure and procedure which is required by this section. It does no more. The statutory section, to which [**12] the Code provision allowing for detainments for probable cause is addressed, allows any employee, licensee or agent, who has probable cause, to detain a patron who they believe is cheating or swindling.

The Code provision further defines this section. It provides for a security department that "shall cooperate with, yet perform independently of, all other departments." It is the members of this security force who have the power to detain, for probable cause, those patrons involved in illegal activity. Illegal activity, in this instance, being defined by the statute to mean cheating and swindling. The Code provision narrows the statutory section because the statute provides that *any employee* may detain. The Code limits this by entrusting this expanded power only to the security force and not to the other employees of the casino.

The issue of the scope of casino guards' arrest powers was raised in *State v. Sanders*, 185 N.J. Super. 258, 267, 448 A.2d 481 (App. Div. 1982). The court in *Sanders* was faced with a situation where a patron of Caesars Boardwalk Regency Casino Hotel, detained for card counting, [2] was attempting to have evidence, seized from him by security [**13] guards, suppressed at trial. It was the defendant's contention that the action of the security guards was state action, since the requirement of a security force within the casino was mandated by statute and they operated as a police force within the casino. Accordingly, he maintained [*620] that 4th Amendment protections should apply.

2 Card counters keep track of the playing cards as they are dealt and adjust their betting patterns when the odds are in their favor.

The court held that the defendant was not detained for any illegal activity. Rather, the security guards were acting to protect the casino's private interests because it was feared that the defendant would be too successful at the blackjack table. Therefore, there is no state action and the 4th Amendment does not apply.

The court, in dicta, considered the role of the security force within the casino as provided for in N.J.S.A. § 5:12-113 to N.J.S.A. § 5:12-116 and N.J.S.A. § 5:12-121(b). The court stressed the

16

Case 1:08-cv-02407-NLH-KMW Document 58-1 Filed 04/28/10 Page 99 of 119 PageID: 1797

Case 1:08-cv-02407-NLH-KMW Document 36 Filed 12/14/09 Page 55 of 70
Case 1:08-cv-02407-NLH-KMW Document 32-3 Filed 08/18/2009 Page 55 of 70

limited extent of these [**14] provisions, as the power to detain is applicable only when the patron is suspected of being involved in one of the enumerated illegal activities. The court went on to find that the limited extent of these powers was emphasized in N.J.A.C. tit. 19, § 45-1:11(c)(7)(vi).

Consequently, we find that N.J.A.C. tit. 19, § 45-1:11(c)(7)(vi) does not extend to permit security guards to detain for *any* illegal activity. Rather, only those activities set forth in the statute. Hence the arrest of Mrs. Barletta was unjustified. Accordingly, the defendant's motion for summary judgment as to the false arrest claim will be denied.

Plaintiffs' complaint also seeks damages on the basis of the Casino's alleged negligence. The plaintiffs contend that a duty was owed by the casino/hotel to Mrs. Barletta, as a paying guest, and by effecting her arrest, it breached this duty, giving rise to her negligence claim. The plaintiffs, however, never make clear what that duty is. Apparently, the plaintiffs are maintaining that as a paying guest of the hotel, a higher duty was owed to Mrs. Barletta than to defendant Bartch, who was not a guest of the hotel, but only an invitee of the Casino. Therefore, [**15] the Golden Nugget was not justified in arresting Mrs. Barletta at defendant Bartch's, an invitee, insistence. However, no case law was cited for this contention.

A cause of action against an innkeeper who effects an unjustified arrest against a paying guest is one for false arrest. This false arrest standard is the same whether one is a paying guest of the hotel or an invitee of the casino.

Further, the Court knows of no duty imposed on an innkeeper to keep his guest free from arrest.

Hence, the defendant's motion for summary judgment as to the negligence claim shall be granted.

Finally, the plaintiffs' complaint seeks recovery for abuse of process. The gist of this cause of action is misusing, or misapplying, process justified in itself for an end other than that which it was designed to accomplish. *Earl v. Winne*, 34 N.J. Super. 605, 614, 112 A.2d 791 (Law Div. 1955), citing *Lakutis v. Greenwood*, 9 N.J. 101, 87 A.2d 23 (1952).

[HN8] The elements of an abuse of process claim are: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceedings. W. Prosser, *Law of Torts*, 857 (1971). The plaintiffs have [**16] not alleged facts sufficient to establish these elements in support of their abuse of process claim. Accordingly, the defendant's motion as to this cause of action shall be granted.

The demand by the plaintiffs for punitive damages cannot be summarily dismissed as it is not possible to determine whether the defendants Golden Nugget acted with reckless disregard of the plaintiffs rights until all factual disputes raised by the false arrest claim are resolved.

The Court shall enter an appropriate order.

17

Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 56 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 56 of 70





**Exhibit K-1**

19

Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009    Page 58 of 70
Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009    Page 58 of 70



03/28/2008

Exhibit K-5



03/10/2008

Exhibit K-7

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 103 of 119 PageID: 1801
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 59 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 59 of 70



03/28/2008

**Exhibit K-29**

21

Case 1:08-cv-02407-NLH-KMW    Document 58-1    Filed 04/28/10    Page 104 of 119 PageID: 1802
Case 1:08-cv-02407-NLH-KMW    Document 36    Filed 12/14/09    Page 60 of 70
Case 1:08-cv-02407-NLH-KMW    Document 32-3    Filed 08/18/2009    Page 60 of 70



03/28/2008

**Exhibit K-30**

22

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 105 of 119 PageID: 1803
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 61 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 61 of 70



**Exhibit L-1**

23

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 106 of 119 PageID: 1804
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12:14:09   Page 62 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 62 of 70



Exhibit L-5



Exhibit L-6

24

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 107 of 119 PageID: 1805
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 63 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 63 of 70



03/10/2008

**Exhibit L-32**

25



*Exhibit M*

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 109 of 119 PageID: 1807
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 65 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 65 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 110 of 119 PageID: 1808
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 66 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 66 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 111 of 119 PageID: 1809
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 67 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 67 of 70

Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 112 of 119 PageID: 1810
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 68 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 68 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 113 of 119 PageID: 1811
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 69 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 69 of 70



Case 1:08-cv-02407-NLH-KMW   Document 58-1   Filed 04/28/10   Page 114 of 119 PageID: 1812
Case 1:08-cv-02407-NLH-KMW   Document 36   Filed 12/14/09   Page 70 of 70
Case 1:08-cv-02407-NLH-KMW   Document 32-3   Filed 08/18/2009   Page 70 of 70



EXHIBIT "E"

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625-0116
Attorney for Defendants,
    NJ Div. of Gaming Enforcement,
    Josh Lichtblau, Director of
    NJDGE, George Morton, Esq., and
    Officer Mark Kosko

By:  Kathleen M. Bartus #8222
    Deputy Attorney General
    (609) 777-4872

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| EARL D. HICKSON, | : | |
|     Plaintiff, | : | Civil Action No.: |
| | : | 08-cv-2407-NLH-KMW |
|   v. | : | |
| | : | |
| MARINA ASSOCIATES d/b/a | : | |
| HARRAH'S CASINO HOTEL ATLANTIC | : | |
| CITY i/s/h/a HARRAH'S HOTEL | : | |
| AND CASINO a/k/a HARRAH'S | : | CERTIFICATION OF DEFENDANT |
| ATLANTIC CITY, ALEXANDER LOVAS, | : | GEORGE MORTON, ESQ. |
| SECURITY OFFICER THOMPSON, | : | |
| SURVEILANCE OFFICER ANN, JOSH | : | |
| LICHTBLAU, DIRECTOR, STATE OF | : | |
| NJ, DIVISION OF GAMING ENFORCE- | : | |
| MENT, MARK KOSKO, BADGE #4540, | : | |
| DIVISION OF GAMING ENFORCEMENT, | : | |
| GEORGE MORTON, ESQ., | : | |
| | : | |
|     Defendants. | : | |

1

GEORGE MORTON, ESQ., of full age, certifies and says:

1. I am an attorney-at-law in the State of New Jersey.

2. On approximately January 10, 2003, I was appointed by the Office of the Public Defender to be stand-by counsel for the above plaintiff, Earl Hickson.

3. At that time, Mr. Hickson had been in jail for over two years, close to three, on the three indictments pending against him.

4. On March 19, 2003, I was able to negotiate a plea for time served, no probation, and that any sentence be suspended.

5. I did not sign the plea form since Mr. Hickson was appearing pro se.

6. Mr. Hickson signed the plea form on the line for defendant and defense attorney.

7. He was sentenced on one indictment that day and given a date to appear on May 16, 2003 for the second sentencing.

8. I was also able to negotiate an ROR bail for his release pending sentencing.

9. On May 16, 2003, Mr. Hickson was sentenced on the second case and received a suspended sentence, with no probation.

10. At the time of the plea and sentence, I was in private practice and was assigned the case as a pool attorney.

11. I have not represented Mr. Hickson in any other matter whether privately or for the Office of the Public Defender

since that time.

12.  In November of 2004, I joined the Office of Public Defender, Parental Representation Unit, now the Office of Parental Representation (OPR).

13.  After joining the OPR, I finished a homicide that was pending and an Appellate Remand from Trial. Both of those were concluded as a staff attorney, not a pool attorney.

14.  I began winding down my private practice in September of 2004.

15.  I have accepted no criminal cases other than the Appellate Remand since September of 2004.

16.  In 2003, according to promis gavel, a bench warrant was issued for plaintiff, Hickson, for failing to appear at an enforcement hearing.

17.  On or about May 15, 2006, plaintiff, Hickson, was arrested on that warrant.

18.  On May 15, 2005, plaintiff, Hickson was released from the County Jail on the order of Judge Neustadter.

19.  Plaintiff, Hickson, believes that I entered guilty pleas to a violation of probation on his behalf on that date.

20.  However, I never entered a guilty plea on plaintiff's behalf on that date, and in fact, I have done no criminal work since 2004 other that the exceptions above.

3

21. I met with plaintiff on May 6, 2009 and provided him with documentation that demonstrated that I did not appear in court on Mr. Hickson's behalf on May 25, 2006 and did not enter a guilty plea on Mr. Hickson's violation of probation charge.

22. I asked Mr. Hickson to show me the promis gavel record that showed I appeared.

23. What he showed me was the charge list and the names of the attorneys who appeared at the last hearing. No where did it indicate that he entered a guilty plea.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
George Morton, Esq.

Dated: 4-26-10

4