# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Earl D. Hickson,<br><br>        Plaintiff,<br><br>    v.<br><br>Marina Associates d/b/a Harrah's Casino Hotel Atlantic City i/s/h/a Harrah's Hotel and Casino a/k/a Harrah's Atlantic City, Alexander Lovas, Vance Thompson, Anna Haag, Josh Lichtblau, Mark Kosko, State of N.J. Division of Gaming Enforcement, George Morton, Esq.,<br><br>        Defendants. | Civil Action No.<br>08-cv-2407 (NLH)(KMW)<br><br>**OPINION** |

**APPEARANCES**:

Earl D. Hickson
719 B Kentucky Avenue
Atlantic City, N.J. 08401
*Pro Se*

Christopher C. Mauro, Esquire
Camacho Mauro Mulholland, L.L.P.
350 Fifth Avenue, Suite 5101
New York, N.Y. 10118
*Attorney for Defendants Marina Associates, Harrah's Hotel and Casino, Anna Haag, and Vance Thompson*

Kathleen M. Bartus, Esquire
State of New Jersey Department of Law and Public Safety
Richard J. Hughes Justice Complex
P.O. Box 116
Trenton, N.J. 08625
*Attorney for Defendants State of New Jersey Division of Gaming Enforcement, Josh Lichtblau, Mark Kosko, and George Morton, Esq.*

**HILLMAN, District Judge**

Plaintiff, Earl Hickson, has brought suit against defendants, Marina Associates, doing business as Harrah's Casino Hotel Atlantic City (or, "Harrah's Hotel and Casino" or the "Casino"), Alexander Lovas, Vance Thompson, and Anne Haag (collectively, "Casino defendants"),[1] and the New Jersey Division of Gaming Enforcement (or, the "DGE"), Josh Lichtblau, Mark Kosko, and George Morton (collectively, "State defendants"). Among other things, Hickson alleges several violations of his civil rights pursuant to federal and state law. Presently, Hickson has moved for summary judgment. The Casino defendants and the State defendants, in turn, have cross-moved for summary judgment, respectively.

For the reasons expressed below, the State defendants' Motion for Summary Judgment is granted in part and denied in part. The Casino defendants' Motion for Summary Judgment is also granted in part and denied in part. Conversely, Hickson's Motion for Summary Judgment and "Renewed/Supplemental" Motion for Summary Judgment are both denied. Lastly, the Court orders Hickson to show cause why it should continue to exercise supplemental jurisdiction over his remaining state law claims.

---

[1] Alexander Lovas has not appeared in this case and is not represented by counsel for the other Casino defendants. Nevertheless, for the sake of clarity and simplicity, "Casino defendants" will include Lovas, unless otherwise specified.

2

I.    **JURISDICTION**

Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under New Jersey law. This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiff's related state law claims under 28 U.S.C. § 1367.

II.   **BACKGROUND**

On May 15, 2006, Hickson visited and gambled at the Harrah's Hotel and Casino.  During the afternoon, he approached a slot machine which appeared to be unoccupied but had credits remaining on it.  Hickson inserted his money voucher and played the machine several times before cashing out and leaving it.  As he walked away, Sharon Fedaczynsky, another casino patron, asked him if he had taken her money that she had been using at the same slot machine.  Hickson showed Fedaczynsky his two vouchers, one of which was blank and the other worth fifteen cents.  Fedaczynsky claimed that she had been playing with about $140 at the slot machine.  Hickson told her to find a casino attendant while he went to call his friend.[2]

While near one of the casino's telephones, Hickson was approached by casino security personnel.  Two of the security

---

[2] Fedaczynsky testified that Hickson had walked away quickly from the slot machine and that she chased after him.  She also recalled that Hickson did not tell her anything about the credits she had left on the machine except that he did not have them. Hickson disputes these recounts.

3

personnel, Alexander Lovas, a security shift manager, and Vance
Thompson, a security officer, instructed Hickson to get off the
phone and reported that a camera captured him stealing
Fedaczynsky's money.  They demanded that Hickson turn over the
voucher.  Hickson denied the allegation and asked for the
security guards' names, which they refused to provide.  At no
point did Hickson tell the officials that he found the credits on
an unoccupied slot machine and deemed them to be abandoned.
Instead, he requested that they contact the police to help
resolve the matter.  Thereafter, Officer Mark Kosko of the DGE
arrived and reiterated to Hickson that whatever occurred is on a
surveillance tape.  Again, Hickson denied any wrongdoing.

The group of men proceeded to a room where Hickson and
several security guards waited while Kosko went to speak with
Fedaczynsky and view the surveillance tape as provided by Anna
Haag, a casino surveillance officer.  According to the complaint,
after Kosko left the room, Hickson was surrounded by security
guards who recounted to one another physical confrontations they
had had with black people.  Upon returning to the room, Kosko
asked Hickson to turn over the ticket.  In response, Hickson
displayed the blank voucher he had previously shown Fedaczynsky.
Against Hickson's wishes, Kosko then searched Hickson's bag but
found nothing.

Soon thereafter, Kosko informed Hickson that there was a

4

warrant for his arrest for violation of probation.  Hickson denied that he was ever on probation or that a valid warrant was issued for his arrest.[3]  Nevertheless, Kosko handcuffed Hickson, placed him under arrest, and escorted him to the county custodial facility.  Hickson was detained for eleven days before being released.

Hickson was charged with the theft of another casino patron's slot voucher.  On or around July 27, 2007, Hickson appeared before the Atlantic City Municipal Court.  The prosecution, however, was unprepared to proceed with the trial as scheduled.  Hickson asked that the case against him be dismissed. The municipal judge granted Hickson's request.

In May 2008, Hickson filed his original complaint in this Court.  Subsequently, he amended his complaint multiple times. Hickson finally filed his third amended complaint in December 2009.  That same month, he filed his Motion for Summary Judgment. In March 2010, he submitted a "Renewed/Supplemental" Motion for Summary Judgment.  The Casino defendants and the State defendants

---

[3] In connection with his purported violation of probation, Hickson alleges that George Morton appeared in New Jersey state court on his behalf and improperly entered a guilty plea to that charge.  Prior to the current set of circumstances, Morton, a lawyer, was appointed as standby counsel for Hickson during a previous criminal charge adjudicated in New Jersey state court in 2003.

cross-moved for summary judgment in April 2010, respectively.[4]

## III. DISCUSSION

### A.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such

---

[4] Most recently, on August 25, 2010, Hickson filed a verified complaint and "Order to Show Cause with Preliminary Injunction." The submission appears to reiterate the allegations and arguments already propounded by Hickson in his complaints, his "Brief in Support of Complaint," his motions for summary judgment, and his oppositions to defendants' motions. It is worth noting, however, that the operative complaint in this case remains Hickson's third amended complaint. Nevertheless, this latest submission does not alter the Court's conclusions in this Opinion. The Court further stresses that, even accepting Hickson's averments as if they were set forth in an affidavit, only those facts to which Hickson has personal knowledge may be considered as true. See Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); Mosley v. City of Pittsburgh Pub. Sch. Dist., 2009 U.S. Dist. LEXIS 81174, at *4 (W.D. Pa. Sept. 8, 2009) (explaining that "[s]tatements in affidavits made only on belief or on information and belief may not be considered in support of or in opposition to summary judgment" and that "courts routinely grant motions to strike affidavits that are based upon 'belief' or 'information and belief,' or which contain conclusory language, vague assertions, gross speculation and inferences" (citation omitted)).

that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323; see Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand

a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Defendants' Motions for Summary Judgment**

**1.   Sovereign Immunity**

The State argues that this Court lacks jurisdiction to hear any claims against the New Jersey Division of Gaming Enforcement by virtue of the doctrine of sovereign immunity.  In addition, the State contends that a state and its agencies do not fall within the purview of Section 1983.  Hickson does not proffer any reasoned argument in response to the State's position.[5]

"Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by her own citizens.'"[6]  <u>Hyatt v. County of Passaic</u>, 340 F. App'x 833, 836

---

[5] In fact, in his opposition to the State defendants' motion for summary judgment, Hickson iterates that he is suing Lichtblau, Kosko, and Morton in their individual capacities.

[6] The Eleventh Amendment to the United States Constitution reads:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In spite of its unambiguous language, "[t]he Eleventh Amendment not only prohibits suits against a state by citizens of other

(3d Cir. 2009) (quoting <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)).  This proscription extends to related state law claims as well.  <u>Raygor v. Regents of the Univ. of Minn.</u>, 534 U.S. 533, 540-41 (2002) (stating that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court").

It appears undisputed that the DGE is an arm or alter ego of the State of New Jersey and, thus, may invoke the principles of sovereign immunity.  <u>See</u> <u>Rudolph v. Adamar of N.J., Inc.</u>, 153 F. Supp. 2d 528, 548, 551 (D.N.J. 2001) (holding that the New Jersey Casino Control Commission, a "sister agency" of the DGE, "is an alter ego of the State of New Jersey and is therefore entitled to Eleventh Amendment immunity"); <u>Stillman v. N.J.</u>, 1989 U.S. Dist. LEXIS 854, at *6 (D.N.J. Jan. 24, 1989) (holding that, "[w]ithout question, the New Jersey Department of Law and Public Safety is nothing more than the alter ego of the state" and is shielded by sovereign immunity).[7]  Further, there is no suggestion that the State has waived its sovereign immunity or that any law implicated in this case has expressly abrogated that immunity.

---

states, but also prohibits suits against a state by its own citizens, as well as suits against a state agency or department." <u>Russo v. Ryerson</u>, 2006 U.S. Dist. LEXIS 10447, at *33 (D.N.J. Feb. 27, 2006) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 46 U.S. 89, 100 (1984)).

[7] The DGE is a division of the New Jersey Department of Law and Public Safety.  <u>See</u> <u>Rudolph</u>, 153 F. Supp. 2d at 548.

In fact, neither Section 1983 or 1981 presents a cause of action against a state or its officials who act in their official capacities.  See Hyatt, 340 F. App'x at 836 ("'[N]either a State nor its officials acting in their official capacities' may be sued for monetary relief under § 1983." (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989))); Dianese, Inc. v. Pennsylvania, 2001 U.S. Dist. LEXIS 11491, at **3-4 (E.D. Pa. Apr. 17, 2001) ("And Congress did not abrogate states' sovereign immunity when it passed 42 U.S.C. § 1981.").

Therefore, because of the principles of sovereign immunity, Hickson's claims against the DGE and any claims against Lichtblau, Kosko, or Morton in their official capacities are dismissed.[8]

### 2.   Section 1983 Claims Alleging Malicious Prosecution, False Arrest/Imprisonment, and Abuse of Process Against State Defendants

The State argues that Lichtblau, Kosko, and Morton are entitled to qualified immunity with respect to Hickson's Section 1983 claims insofar as they committed no constitutional violations.  In response, Hickson opines that given the close of discovery and that the case has advanced to the summary judgment

---

[8] Sovereign immunity notwithstanding, the Court recognizes that a plaintiff may sue a state officer in his or her official capacity for prospective injunctive relief for violations of federal law.  Figueroa v. City of Camden, 580 F. Supp. 2d 390, 398 (D.N.J. 2008).  In this case, however, Hickson does not seek any such remedy from the named state officials, or at least none that the Court may grant.

phase of litigation, the defense of qualified immunity is
untimely and precluded.

"'The doctrine of qualified immunity protects government
officials from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir.
2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)).
Qualified immunity may shield a government official from
liability regardless of whether the official's conduct
constituted a mistake of law, of fact, or a combination of the
two.  Id. at 250.  To determine the applicability of qualified
immunity, a court must undertake a two-step inquiry:

> First, a court must decide whether the facts
> that a plaintiff has alleged or shown make out
> a violation of a constitutional right.
> Second, if the plaintiff has satisfied this
> first step, the court must decide whether the
> right at issue was clearly established at the
> time of a defendant's alleged misconduct.
> Qualified immunity is applicable unless the
> official's conduct violated a clearly
> established constitutional right.[9]

Id. (citing Pearson, 129 S. Ct. at 815-16).  "Where a defendant
asserts a qualified immunity defense in a motion for summary

---

[9]Although the aforementioned sequence of the qualified
immunity analysis is often appropriate, it is not rigid and
inflexible; rather, a court may exercise its discretion in
deciding which of the two prongs should be addressed first in
light of a case's particular circumstances.  Montanez, 603 F.3d
at 250 (quoting Pearson, 129 S. Ct. at 818).

11

judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."[10]  <u>Id.</u> (citation omitted).

At the outset, the Court looks to determine whether the State defendants' actions violated a clearly established right as alleged by Hickson.  First, Hickson avers that the State defendants maliciously prosecuted him.

> To prove malicious prosecution under Section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

---

[10] Consistent with Hickson's argument, it is true that the issue of immunity "ordinarily should be decided by the court long before trial." <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991).  But, contrary to Hickson's understanding, qualified immunity may be decided as part of a motion for summary judgment. <u>See</u> <u>id.</u> at 226-29 (granting defendants' motion for summary judgment on the grounds of qualified immunity).  Hence, no matter of timeliness or waiver hinders the State defendants from asserting qualified immunity at this juncture.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (footnote
omitted).  Second, Hickson claims that the State defendants
falsely arrested and imprisoned him.  To state a false arrest or
false imprisonment claim under the Fourth Amendment and pursuant
to Section 1983 requires that the plaintiff show that "the
arresting officer lacked probable cause to make the arrest."
Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa.
2001).  "Probable cause exists when the totality of facts and
circumstances are sufficient to warrant an ordinary prudent
officer to believe that the party charged has committed an
offense."  Id. (citing Sharrar v. Felsing, 128 F.3d 810, 817-18
(3d Cir. 1997)).  Although typically reserved for the jury's
fact-finding function, the existence of probable cause may be
affirmed as a matter of law "if the evidence, viewed most
favorably to Plaintiff, reasonably would not support a contrary
factual finding."  Sherwood, 113 F.3d at 401; see Hunter v.
Bryant, 502 U.S. 224, 228 (1991) (stating that the issue of
immunity should be decided by the court prior to trial and turns
upon the reasonableness of an officer's actions, and not whether
a more reasonable interpretation exists).

Here, even if the State defendants are responsible for
initiating a criminal proceeding against Hickson, probable cause
existed to justify Hickson's arrest.  To begin, there is no
dispute that Sharon Fedaczynsky accused Hickson of taking the

13

money she had been playing and won at a slot machine.  During her deposition, Fedaczynsky testified that she had won over a hundred dollars on the slot machine and while she went to tell her husband, Hickson took the money from the machine and walked away. Kosko was aware of these allegations soon after he arrived on the scene and found that Hickson had already been detained by casino security personnel for allegedly taking another patron's slot voucher.

According to his investigation report,[11] Kosko observed video footage depicting Hickson's removal of a voucher from the slot machine at issue and, thereafter, a conversation between Hickson and Fedaczynsky.  During Kosko's interview with Fedaczynsky, the report states, Fedaczynsky recounted that she had walked away from the slot machine, leaving behind about $142 in credits, to talk with her husband, but noticed Hickson standing in front of her machine; when she returned to the machine, the credits had been cashed out and the voucher removed. Further, Kosko was informed by a slot manager that Fedaczynsky's

---

[11] The Court may consider Kosko's investigation report as part of the record.  See Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994) (holding that "the district court exercised sound discretion in admitting for consideration" an unsworn police report).  Although Hickson disagrees with the conclusions drawn therein, the report essentially repeats facts already alleged or established in the case, i.e., Fedaczynsky's allegations and Hickson's outstanding warrant, and serves principally to show Kosko's awareness of those facts -- regardless of their ultimate veracity -- at the time when the events of this case were still unfolding.

casino players' card, known as a "Total Rewards Card," was in the machine at the time when Hickson removed the voucher.[12]  Based on these facts known to him at the time, Kosko had probable cause to believe that Hickson may have stolen Fedaczynsky's voucher. Whether Hickson actually stole the credits, of course, is irrelevant to the question of probable cause.  Only that Kosko had probable cause to detain or arrest Hickson is relevant to this analysis.  See Lynn v. Christner, 184 F. App'x 180, 183-84 (3d Cir. 2006) ("The proper inquiry in a 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." (citation and internal quotation marks omitted)).

Alternatively, even in the absence of probable cause regarding Hickson's alleged theft, Kosko still would be immunized because his actions were objectively reasonable in light of the circumstances.  Along with the allegations that Hickson stole Fedaczynsky's credits, Kosko had learned and reasonably relied on the belief that Hickson had an outstanding warrant.  Although Hickson challenges the validity of the warrant, Kosko was entitled to rely on it in good faith.  See Berg v. County of

---

[12] During her deposition, Fedaczynsky confirmed that she left her Total Rewards Card in the slot machine and may have left her soda on or near the machine.  Hickson contests these putative facts.

Allegheny, 219 F.3d 261, 273 (3d Cir. 2000) ("[W]e have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."); Tolan v. Fedorchak, 2009 U.S. Dist. LEXIS 89907, at **17-18 (D.N.J. Sept. 28, 2009) (granting defendants' motion for summary judgment against claim of unlawful arrest because officer's reliance on warrant was objectively reasonable).  Hickson does not raise a genuine issue of material fact on any of these points, including the reasonableness of Kosko's reliance on the warrant.

Therefore, given the totality of the circumstances, including the surveillance footage, Fedaczynsky's account of the events, and the outstanding warrant, Kosko had probable cause to believe that Hickson had committed an unlawful offense.[13] Moreover, notwithstanding the analysis heretofore, the fact remains that Hickson has failed to carry his burden of proof at this stage of litigation.[14]  Apart from his allegations and conclusory remarks, he has not presented any definitive evidence that undermines the State defendants' arguments and satisfies the

---

[13] Additionally, in his deposition, Hickson admitted that he had not informed Kosko or the casino security guards that he had considered any credits from the slot machine abandoned.

[14] For example, with respect to the malicious prosecution claim, Hickson presents no evidence that the State defendants acted maliciously or with ill intent, a requisite element to proceed and prevail on this cause of action.

16

burden ascribed to him.[15]  See Celotex, 477 U.S. at 323 (holding that "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," thereby "necessarily render[ing] all other facts immaterial" (internal quotation marks omitted)); see also Exantus v. Harbor Bar & Brasserie Rest., 2010 U.S. App. LEXIS 14464, at *4 (3d Cir. Jul. 14, 2010) (noting that "a party opposing summary judgment 'must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue'" (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005))).

Other than Kosko, it appears that Hickson also charges Lichtblau with malicious prosecution and false arrest/imprisonment and may also include Morton as part of those broad allegations.  However, based on Hickson's averments and evidence, it is unclear how Lichtblau or Morton could be liable for either purported offense.  Assuming arguendo some unlawful misconduct by Kosko, there is simply no evidence that Lichtblau, the director of the DGE, knew of or in any way tacitly approved

---

[15] Pursuant to the Magistrate Judge's Order dated December 15, 2009, all pretrial factual discovery in this case was to be completed by February 26, 2010, and all dispositive motions were to be submitted by April 30, 2010.  Accordingly, at this time Hickson should be in possession of whatever evidence is necessary to defeat defendants' motions for summary judgment.

or acquiesced to such misconduct, or otherwise breached a duty inherent to his position; in other words, no tangible connection or affirmative link between Lichtblau and the alleged wrongdoing has been shown.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Further, Morton's alleged offense seems to concern his representation of Hickson in a criminal matter dating back to 2003 and the charge of violation of probation for which Kosko arrested him.  However, except for Hickson's general accusations, seemingly predicated upon an alleged conspiracy to falsify records and criminalize Hickson, nothing in the record suffices to show that Morton committed any wrongdoing warranting any of the Section 1983 causes of action set forth by Hickson.  Nor does any affirmative evidence retort Morton's certification wherein he swears that he did not enter a guilty plea on Hickson's behalf or perform any legal work for him since 2003.

Furthermore, Hickson also alleges abuse of process.

> A section 1983 claim for malicious abuse of
> process lies where prosecution is initiated
> legitimately and thereafter is used for a
> purpose other than that intended by the law.
> The crux of this action is the perversion of
> the legal process to achieve an objective
> other than its intended purpose.  When process
> is used to effect an extortionate demand, or
> to cause the surrender of a legal right, or is
> used in any other way not so intended by

> proper use of the process, a cause of action
> for abuse of process can be maintained.   To
> establish such a claim, there must be some
> proof of a definite act or threat not
> authorized by the process, or aimed at an
> objective not legitimate in the use of the
> process.

Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 798 (D.N.J.

2008) (citations, quotation marks, and brackets omitted).  At

this stage of litigation, Hickson has not demonstrated the

malignant action or intent necessary to sustain this claim.

Again, he relies entirely on speculation and self-conceived

conclusions, and not personal knowledge of facts or events.

For the reasons stated above, and because the State

defendants did not violate his constitutional rights, summary

judgment must be awarded to the State defendants with respect to

Hickson's Section 1983 claims of malicious prosecution, false

arrest/imprisonment, and abuse of process.[16]

### 3. Section 1983 Claims Alleging Malicious Prosecution, False Arrest/Imprisonment, and Abuse of Process Against Casino Defendants[17]

---

[16] The State defendants also contend that Hickson cannot recover punitive damages under Section 1983 because he cannot demonstrate the ill intent necessary to trigger that remedy. Having concluded altogether that Hickson cannot sustain his Section 1983 claims, the Court agrees that no punitive damages -- or, for that matter, any damages -- could be awarded under Section 1983 in this case.

[17] The Court recognizes that Alexander Lovas is named as a defendant in this case, but has not entered an appearance and is not represented by the Casino defendants' counsel.  However, virtually all of the facts or claims directed at Lovas appear to mirror the same facts and claims directed at Vance Thompson.

The Casino defendants argue that Hickson has failed to prove the elements of any Section 1983 claim.  With respect to the malicious prosecution claim, they contend that they did not initiate a criminal proceeding against Hickson, let alone with malicious intent and without probable cause.  The existence of probable cause, say the Casino defendants, also dooms his false arrest/imprisonment claim.  Further, the Casino defendants assert that Hickson has not shown the ulterior motive or illegitimate actions necessary to succeed on his abuse of process claim. Hickson generally disagrees with the Casino defendants' positions.[18]  More specifically, from what the Court can decipher, Hickson contends, among his many assertions, that the Casino defendants' actions exceeded the scope of their authority

---

Therefore, the Court concludes that, without any further evidence concerning and distinguishing Lovas, the same conclusions drawn as to Thompson's liability must also be drawn as to Lovas's liability.  Therefore, because his actions, and the legal consequences thereof, appear to be entirely intertwined with those of Thompson and the Casino, the viability of Hickson's case against Lovas will also be evaluated herein.  The parties should have notice of this approach, and should suffer no prejudice as a result, given the close connection between the facts and allegations involving Lovas and Thompson and the fact that both parties refer to Lovas in their submissions.

[18] The precise contours of Hickson's arguments against the Casino defendants' motion are unclear.  In his opposition to the motion, Hickson challenges the Casino defendants' undisputed facts, reiterates his own allegations, and cites to numerous cases, statutes, and regulations.  From the Court's reading, however, none of Hickson's counter-arguments directly addresses or refutes the Casino defendants' assertions that he has not presented sufficient evidence to support his claims.

and were unjustified.

For reasons similar to those stated above, Hickson cannot
maintain his Section 1983 malicious prosecution and false
arrest/imprisonment claims against the Casino defendants.  Lovas
and Thompson had probable cause to detain and question Hickson,
as illustrated by Fedaczynsky's deposition testimony.
Fedaczynsky testified that she told the casino security officers
that Hickson had taken her credits from the slot machine.  See
Lynn, 184 F. App'x at 184 (affirming dismissal of false
arrest/imprisonment and malicious prosecution claims because
victim's identification of plaintiff as alleged robber provided
probable cause for officers to arrest plaintiff); Petaccio v.
Davis, 76 F. App'x 442, 445 (3d Cir. 2003) ("A victim's
identification of a party as the perpetrator may validly provide
probable cause to charge that party.").  Further, Hickson
admitted as part of his deposition that he did not inform the
security officers that he considered the slot machine at issue,
or the credits therein, abandoned.  Consequently, Lovas and
Thompson reasonably acted on information provided to them by the
alleged victim and detained Hickson pending a further
investigation by a DGE officer.

Moreover, the Court finds that Hickson does not proffer any

sufficient evidence to support his claims.[19]  Apart from his
allegations and conclusory remarks, the record is entirely devoid
of any evidence that raises a genuine issue of material fact as
to whether any of the defendants acted with probable cause or
impermissible intent.  Hickson presents photographic images,
captured from the casino's surveillance cameras, depicting his
interaction with the slot machine, Fedaczynsky, and casino
personnel.  However, these images, and Hickson's explications
thereof, do not impugn the reasonableness of defendants' actions
in light of Fedaczynsky's allegations.  Nor does Hickson submit
any evidence that creates a genuine issue of material fact as to
Anna Haag and her alleged involvement in this episode.

Most notably, in support of his claim, Hickson relies on
Barletta v. Golden Nugget Hotel Casino, 580 F. Supp. 614 (D.N.J.
1984), for the proposition that a New Jersey casino security
officer exceeds his authority and commits a false arrest when he
detains a casino patron for an unlawful activity other than
cheating and swindling, i.e., unlawful activities that do not
fall within the statutory boundaries of the officer's power and
responsibility.  However, Barletta is inapposite to the present
matter insofar as it involved a state law claim for false arrest,
and not a claim under Section 1983.  Whereas a Section 1983 cause

---

[19] Again, with respect to the malicious prosecution claim,
Hickson presents no evidence illustrating that the Casino
defendants acted maliciously or with ill intent.

of action for false arrest/imprisonment requires the absence of probable cause, New Jersey's analogue is arguably more expansive, attaching liability to a defendant that, even with probable cause, otherwise lacks legal authority or justification for his or her actions.  See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (explaining that under New Jersey law, the tort of false imprisonment requires "lack of proper legal authority or legal justification" (citation and internal quotation marks omitted)).  More to the point, whether a defendant lacks proper authority or justification under New Jersey law to effectuate an arrest necessitates a consideration of substantive New Jersey law.  But the current state of New Jersey law need not dictate the substance of a Section 1983 claim and whether a defendant acted reasonably in accordance with the Fourth Amendment.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures.").

Moreover, only a state actor may be subject to a Section 1983 cause of action.  Pugh v. Downs, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (holding that casino security officer was not a state actor for purposes of Section 1983 where he allegedly acted in concert with police to violate a casino patron's rights

23

because nothing suggested that a preexisting arrangement existed
whereby the police officer's judgment to act was substituted by
that of the casino security officer); Lewis v. J.C. Penney Co.,
948 F. Supp. 367, 373 (D. Del. 1996) (granting summary judgment
to defendants because security officials for commercial
establishment were not state actors for purposes of Section 1983
where they merely detained suspected shoplifters until the police
arrived at the scene); Shannon v. Spectaguard, Inc., 1995 U.S.
Dist. LEXIS 7075, at **11-12 (E.D. Pa. May 24, 1995) (granting
summary judgment to defendants because plaintiff failed to
proffer any evidence demonstrating that security guards conspired
with police and therefore constituted state actors); see also
Doug Grant v. Greate Bay Casino Corp., 232 F.3d 173, 189 (3d Cir.
2000) (concluding that allegations of constitutional violations
under Section 1983 against casinos are insufficient because
"[s]tate regulation and the [Casino Control Commission's]
authorization of casino activities do not transform the casinos
into state actors").  Apart from his generalized averments and
allegations of conspiracy -- which, as will be explained, fail as
a matter of law at the summary judgment stage -- no evidence
demonstrates that the Casino defendants were state actors and are
subject to Section 1983.  On the contrary, it appears more likely
that, while investigating the accusations surrounding Hickson and
waiting for Kosko to arrive, the Casino defendants were mere

24

private actors performing their services for their private
employer, the Casino.

The Court need not expressly address the matter of state
action.  Rather, the matter simply serves to illustrate a
distinction between <u>Barletta</u> and the case at bar.  The fact
remains that, assuming state action, the Casino defendants had
probable cause to detain Hickson, and as a result, they cannot be
held liable for malicious prosecution or false
arrest/imprisonment under Section 1983.  Whether they exceeded
their statutory authority as private actors and violated New
Jersey's common law, is another question that the Court need not
address, as explained <u>supra</u>.

With respect to his claim for abuse of process, defendants
again must prevail.  As articulated above, Hickson presents no
evidence, other than broad accusations devoid of personal
knowledge, to demonstrate the requisite intent or action to
sustain that cause of action under Section 1983.

Therefore, for the reasons stated above, including the
existence of probable cause and the absence of any evidence to
raise a genuine issue of material fact, summary judgment must be
awarded to the Casino defendants with respect to Hickson's
Section 1983 malicious prosecution, false arrest/imprisonment,
and abuse of process claims.

### 4.   42 U.S.C. § 1981

25

Defendants argue that Hickson's Section 1981 claim fails because he has not demonstrated that he was deprived of any right protected or guaranteed by the statute.[20]  Hickson contends that he lost the benefit of the abandoned credits as a result of defendants' actions.

42 U.S.C. § 1981 provides:

> (a) Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a cause of action under Section 1981, plaintiffs must demonstrate that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) discrimination concerned a statutorily enumerated activity, such as the rights to make and enforce contracts or to purchase property.  Bailey v. Harleysville Nat'l Bank & Trust Co., 2005 U.S. Dist. LEXIS 17527, at **13-14 (E.D. Pa. Aug. 22, 2005);

---

[20] In defense of his claim, Hickson appears to rely on the fact that the State defendants did not oppose or object to those facts and arguments set forth in his "Brief in Support of Complaint."  Hickson also articulates the Third Circuit jury instructions for Section 1981 and Title VII disparate treatment causes of action.  The import of these assertions is not entirely clear but certainly unpersuasive in light of the following analysis.

<u>Cedeno v. Wal-Mart Stores, Inc.</u>, 1999 U.S. Dist. LEXIS 18851, at *6 n.7 (E.D. Pa. Nov. 30, 1999) (citations omitted).  If a plaintiff articulates a <u>prima</u> <u>facie</u> claim, the defendant may assert legitimate, non-discriminatory reasons for its action. <u>Bailey</u>, 2005 U.S. Dist. LEXIS 17527, at *14.  The plaintiff then must show that the defendant's reasons constituted pretext.  <u>Id.</u>

The Court agrees that there is no evidence that defendants intentionally discriminated against Hickson in relation to a statutorily enumerated activity.  Simply put, Hickson does not sufficiently allege or prove that, on the basis of race, he was deprived of a right to make or enforce a contract, to acquire and protect property, or any other right or activity associated therewith, as prescribed in Section 1981.  As mentioned above, Hickson testified that he never informed defendants or Fedaczynsky that he found a voucher which he deemed abandoned. Thus, there is no genuine issue of material fact that defendants, relying on Fedaczynsky's allegations and unaware of Hickson's justification for taking the voucher, intended to deprive him of a right.

Even if the Court were to accept that Hickson was denied the right to enter into or enforce a contract, his Section 1981 claim must fail.  Aside from some vague exchanges that are attributed generally to casino security personnel, nothing in the record suggests that defendants mistreated Hickson on account of his

27

race.[21]   Moreover, defendants assert a legitimate, non-
discriminatory reason for their actions -- Hickson's alleged
offense of taking another person's casino voucher.  Hickson
presents no genuine issue of material fact to challenge this
reason other than to say that he did not unlawfully take it.
Therefore, defendants are granted summary judgment with respect
to Hickson's Section 1981 claim.

### 5.   Conspiracy

In addition to his Section 1983 claims, Hickson also alleges
that defendants and others, including New Jersey judges and
prosecutors, conspired to deprive him of his constitutional
rights through malicious prosecution, false arrest/imprisonment,
abuse of process, and other means.

"In order to demonstrate the existence of a conspiracy under

---

[21] Being an African-American, Hickson qualifies as a racial
minority.  However, the only reference to race in this case is
Hickson's averment in his complaint that during the time he was
detained, several casino security officers attempted to
intimidate him by recalling past incidents in which they
physically confronted other black people.  Notwithstanding the
other deficiencies with his cause of action, this allegation
alone does not save Hickson's Section 1981 claim.  First, these
stray remarks are presented without much detail.  Second, it is
unclear whether any of these statements are attributable to any
of the named defendants.  Third, the stray remarks do not obviate
the probable cause, based on Fedaczynsky's allegations, upon
which defendants acted before the remarks were ever made; by the
time the remarks were spoken by casino personnel, Kosko had
assumed control of Hickson's detention.  Lastly, even if those
remarks could evince discriminatory animus, as explained above,
defendants proffer legitimate, non-discriminatory reasons for
their treatment of and interaction with Hickson.

§ 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" <u>Woods v. Grant</u>, 2010 U.S. App. LEXIS 10448, at *8 (3d Cir. May 21, 2010) (quoting <u>Parkway Garage, Inc. v. City of Phila.</u>, 5 F.3d 685, 700 (3d Cir. 1993)).  Hickson has not carried his burden to establish a conspiracy claim under Section 1983

First, Hickson has not demonstrated any violation of his federal constitutional or statutory rights.  Accordingly, he cannot proceed with his conspiracy claim.[22]  <u>See Baltimore v. Harrisburg Parking Auth.</u>, 2010 U.S. Dist. LEXIS 59508, at *29 (M.D. Pa. Jun. 16, 2010) ("In any case, because Plaintiff fails to state an underlying § 1983 violation against Defendants, her claim for conspiracy must also be dismissed." (citing <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 407 (3d Cir. 2000))).

Second, Hickson fails to set forth sufficient evidence to engender a genuine issue of material fact.  Hickson relies primarily upon his own allegations, inferences, and conclusions

---

[22] The theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights.  <u>Revak v. Lieberum</u>, 2009 U.S. Dist. LEXIS 34691, at *4 (W.D. Pa. Apr. 23, 2009).  That precept resounds here where Hickson alleges conspiracy in relation to each of his Section 1983 claims and identifies as conspirators defendants and third parties not named in the complaint.

to support his conspiracy claims.  Without more, these claims
cannot survive summary judgment.  See Exantus, 2010 U.S. App.
LEXIS 14464, at *4; see also Revak v. Lieberum, 2009 U.S. Dist.
LEXIS 34691, at *8 (W.D. Pa. Apr. 23, 2009) (granting summary
judgment to defendants with regard to Section 1983 conspiracy
claims because plaintiff proffered no evidence to show that
defendants conspired to violate plaintiff's rights, to destroy a
videotape depicting parties' interactions, or to otherwise
conceal actual events).

    Hickson's conspiracy allegations do not stem from any
personal knowledge of fact, but rather are entirely speculative
and conclusory, drawing and relying on inferences wholly
unsupported by any concrete evidence.  There is simply nothing in
the record from which a jury could reasonably conclude that the
named defendants and other parties entered into an agreement to
violate Hickson's rights.  Other than alleging an overarching
conspiracy perpetrated in favor of New Jersey's casino industry
and designed to insulate a growing number of tortfeasors, Hickson
has not proffered anything to raise a genuine issue of material
fact as to the time, place, or nature of the agreement or the
cooperation and understanding between the named defendants and
other supposed parties.  Among the only actual, affirmative
evidence furnished in support of his claims are the photographic
images from the casino's surveillance camera depicting the events

30

in question.  Again, these images -- many of which are difficult
to decipher as presented to the Court -- do not prove any
elements of Hickson's causes of actions absent some credible
testimony concerning their import.[23]

Therefore, for the reasons stated above, defendants are
granted summary judgment with respect to Hickson's Section 1983
claims alleging conspiracy.[24]

### C.  Plaintiff's Motions for Summary Judgment

In December 2009, Hickson moved for summary judgment against
defendants.[25]  In March 2010, he "renewed" or supplemented his

---

[23] Although Hickson does not refer to it, his complaint could
be read to implicate 42 U.S.C. § 1985(3).  Section 1985(3)
combats conspiracies predicated on invidious racial or class
discrimination designed to deprive an individual of equal
treatment of the law.  Wright v. Loftus, 2009 U.S. Dist. LEXIS
108639, at *9 (M.D. Pa. Nov. 20, 2009) (citing Lake v. Arnold,
112 F.3d 682, 685 (3d Cir. 1997)).  However, were Section 1985 at
issue in this case, Hickson fails to support such a claim with
any evidence necessary to advance it, and for that reason, a
Section 1985 claim should suffer the same fate as Hickson's
Section 1983 claims.  See Woods, 2010 U.S. App. LEXIS 10448, at
*8 n.2 (holding that plaintiff cannot sustain a Section 1985
claim because he "has not alleged any facts from which we can
infer that Defendants colluded with the requisite discriminatory
animus to deprive him of his constitutional rights").

[24] Hickson also articulates a Section 1983 cause of action
for fraud.  The Court questions whether Section 1983 is the
proper vehicle to assert a cause of action for fraud, a claim
usually borne by state law.  To the extent that allegations of
fraud may be advanced pursuant to Section 1983 or intersect with
his other claims, Hickson proffers no evidence to support his
cause of action.

[25] Hickson's original motion for summary judgment appears, in
large part, to recapitulate the complaint's averments and
defendants' answers to those averments, followed by Hickson's own

31

request for summary judgment.  For the reasons heretofore,
Hickson's motions for summary judgment, with respect to his
federal claims, must be denied.  However, the Court is compelled
to respond to several issues raised in Hickson's motions and
reiterate some conclusions already enunciated in this Opinion.

First, Hickson repeatedly asserts his entitlement to summary
judgment on the grounds that defendants did not specifically
respond to his "Brief in Support of Complaint" or his other
submissions.  Defendants' lack of a response, Hickson opines,
equates to a concession of the relevant events and alleged
liabilities.[26]  It is worth noting, however, that defendants
filed answers in response to Hickson's complaint, which has been
amended three times.  See Rago v. City of Pittsburgh, 2010 U.S.
Dist. LEXIS 76739, at *18 (W.D. Pa. Jul. 29, 2010) (concluding
that "[s]ummary judgment cannot be granted in plaintiff's favor
based upon the pleadings alone").  Further, defendants have also
responded to and opposed Hickson's motions for summary judgment,
along with submitting their own dispositive motions.

---

arguments and conclusions as to the credibility and legitimacy of
defendants' answers.

[26] Repeated throughout his Motion for Summary Judgment, among
other things, Hickson asserts: "No answering defendant has
responded to said brief, citing any basis i[n] fact and law to
rebut plaintiff's Brief in Support of Complaint, signifying a
waiver and or inability to muster any rebuttal that would dispel
plaintiff's basis in fact and law, leaving no issue as to said
averment."

32

Second, Hickson relies upon photographic images captured by a casino surveillance camera to bolster his claim that the voucher at issue was abandoned and that the videotape depicting the relevant events was manipulated.  Again, many of these images as presented to the Court offer limited visibility.  Further, besides his own averments, nothing in the record augments Hickson's claims, especially regarding the alleged manipulation of the video footage.  Absent some affirmative evidence at this stage of litigation, Hickson cannot merely rely on his general accusations and suspicions concerning the malicious manipulation of video technology and a mass conspiracy to infringe upon his civil rights.  In other words, no genuine issues of material fact exist with regard to those contentions so that a trier of fact could reasonably rule in Hickson's favor.

Third, Hickson continuously asserts that any claim he made to credits in the slot machine were justified in view of their abandonment.  Naturally, Hickson contests Fedaczynsky's statements in which she claims ownership over the credits and alleges that Hickson stole them.  The question whether the credits were actually abandoned is immaterial to the present proceedings.  Rather, the germane question pertains to defendants' actions given the context and totality of the circumstances.  Defendants' actions, as already explained, were justified and do not provide the basis for a viable Section 1983

claim as articulated by Hickson.

Fourth, and finally, within his submissions to the Court, Hickson continuously conjures a "machination of unlawful eviction" wherein defendants and other entities, including judges and other state officials, have jointly acted to eject and evict Hickson, and other similarly situated persons, from the casinos. Based on the Court's reading of the allegations in Hickson's amended complaint and the record as a whole, the question whether Hickson was impermissibly blackballed from the Casino is not squarely before the Court or imperative to the claims Hickson has specifically enumerated.  Hickson's voluminous allegations of malicious prosecution, false arrest/imprisonment, abuse of process, racial discrimination, and corresponding claims of conspiracy, have been addressed and ruled in favor of defendants. Should Hickson have other allegations apart from his remaining state law claims, he may attempt to pursue them in due course. However, to the Court's understanding, Hickson has not alleged any other colorable causes of action that warrants the Court's attention at this time.[27]

### D.   Supplemental Jurisdiction

Hickson's remaining claims against defendants seem to implicate New Jersey constitutional, statutory, and common law.

---

[27] Any other arguments that Hickson mentions throughout his hundreds of pages of submissions are found to be without merit or beyond the scope of his particularized claims.

Because Hickson's federal claims have been dismissed, the Court, sua sponte, raises the issue of supplemental jurisdiction over the remaining state law claims.

28 U.S.C. § 1367 reads, in relevant part,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). "'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Id. (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)); see Livingston v. Borough of McKees Rocks, 223 F. App'x 84, 88-89 (3d Cir. 2007) (holding that because the district court correctly granted summary judgment in favor of defendants on all of plaintiffs' federal claims, "it was appropriate for the Court to decline to exercise supplemental jurisdiction over the [plaintiffs'] state

35

claims"); <u>Santiago v. York County</u>, 2010 U.S. Dist. LEXIS 67437, at **10-11 (M.D. Pa. Jul. 7, 2010) (declining to exercise supplemental jurisdiction over state law claims after granting defendants summary judgment as to plaintiffs' Section 1983 claims).

The Court questions whether any considerations of judicial economy, convenience, or fairness would warrant its continued adjudication of this case.  As such, the Court is inclined to refrain from exercising supplemental jurisdiction in this case but, in the interests of fairness and prudence, will offer Hickson an opportunity to explain why this case should remain before this Court.  Accordingly, the Court orders Hickson to show cause, within twenty (20) days of the date of this Opinion, why it should exercise supplemental jurisdiction over the remaining pendent state law claims.  Defendants shall have seven (7) days from the submission of Hickson's response to file their own responses to the Court's Opinion.

Consequently, the Court does not opine on the merits of Hickson's state law claims.  To the extent that defendants asked the Court to grant them summary judgment with respect to the state law claims, defendants' motions are denied, without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the State defendants' Motion for

Summary Judgment is granted in part and denied in part.  Second, the Casino defendants' Motion for Summary Judgment is granted in part and denied in part.  Third, Hickson's Motion for Summary Judgment and "Renewed/Supplemental" Motion for Summary Judgment are denied.  Lastly, the Court orders Hickson to show cause why, in the absence of any pending federal claims, the Court should not decline to exercise supplemental jurisdiction over the remaining state law causes of action.  An Order consistent with this Opinion will be entered.


Dated: September 27, 2010            /s/ NOEL L. HILLMAN
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

37